HENRY LORD GAY

*v.*

H. H. KOHLSAAT *et al.*

*Opinion filed October 23, 1906.*

1. CORPORATIONS—*section 16 of Corporation act refers only to de jure corporations.* Section 16 of the general Incorporation act, providing that "if the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation, assenting thereto, shall be liable for such excess to the creditors of such corporation," applies only to *de jure* corporations, and not to associations which exercise corporate powers without legal authority. (*Streator Independent Telephone Co.* v. *Construction Co.* 217 Ill. 577, distinguished.)

2. SAME—*sections 16 and 18 of Corporation act provide distinct remedies.* Sections 16 and 18 of the general Incorporation act pro-

vide distinct remedies, the former applicable only to corporations *de jure* incurring indebtedness beyond the capital stock, while the latter provides a remedy at law against persons assuming to exercise corporate powers, for all debts and liabilities made by them and contracted in the name of the pretended corporation.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This cause was brought to this court from the Appellate Court for the First District by writ of error, to reverse the judgment of that court, which reversed the decree of the circuit court and remanded the cause, with directions to said circuit court to dismiss complainant's bill. The Appellate Court, in disposing of the case, made the following statement, which we think fairly presents the issues as disclosed by the record, and therefore adopt the same as our statement of the case:

"This is an appeal by H. H. Kohlsaat, John B. Waldo and Montgomery B. Gibbs from a decree rendered against them at the suit of appellee. The original bill was filed July 15, 1896, against the appellants and Stanley Waterloo, A. T. Packard, W. M. Knox, F. E. Johnson, George Schneider, John B. Waldo and the Chicago Press Club Auxiliary Association. An amended bill against the same defendants was filed December 17, 1897. In the amended bill it is averred substantially as follows: About July 18, 1892, John C. Bundy, Stanley Waterloo and William A. Taylor filed in the office of the Secretary of State a statement, in accordance with the act concerning corporations, setting forth that they proposed to form a corporation by the name 'Chicago Press Club Auxiliary Association,' its object being to 'form and maintain, and assist in forming and maintaining, an organization for social intercourse among members of the press, and such others as may be provided by suitable by-laws, and for the cultivation of literature and the fine arts, and to provide and maintain a private library and reading

rooms, and for the collection of works of art, and to provide and hold, for the uses of such association, a suitable building, library, reading and assembly rooms in and about the premises, and for the proper uses of the association;' and it was also stated in said statement that the capital stock of the proposed corporation would be $1000, divided into shares of $100 each; that the location of its principal office would be in Chicago, Illinois, and its duration ninety-nine years. Said statement was received and filed in the office of said secretary July 18, 1892, and at said date said secretary issued to said Bundy, Waterloo and Taylor a license to open books of subscription to the capital stock of the proposed corporation, which they did, and the stock was subscribed for as follows:

| NAMES. | SHARES. | AMOUNT. |
| --- | --- | --- |
| William H. Park | 1 | $100.00 |
| Stanley Waterloo | 1 | 100.00 |
| W. M. Knox | 1 | 100.00 |
| F. E. Johnson | 1 | 100.00 |
| A. T. Packard | 1 | 100.00 |
| John B. Waldo | 1 | 100.00 |
| Geo. Schneider | 1 | 100.00 |
| James W. Scott | 1 | 100.00 |
| Montgomery Gibbs | 1 | 100.00 |
| H. H. Kohlsaat | 1 | 100.00 |

"From and after July 18, 1892, said Chicago Press Club Auxiliary Association (hereinafter called auxiliary association) assumed and exercised the functions, franchises, rights and privileges of a corporation, and continued to carry out the purposes of its incorporation as specified in the aforesaid statement, and was managed and held out to the world as a corporation, with the knowledge and acquiescence of all of the defendants, and complainant 'was led by said defendants, and each of them, to deal with said auxiliary association as a corporation in fact and in law, knowing naught to the contrary.'

"November 17, 1892, the Secretary of State issued to said auxiliary association a final certificate of incorporation.

August 8, 1892, the members and stockholders of said auxiliary association elected as directors the above named ten subscribers for stock, some for one and some for two years then next ensuing, and also elected H. H. Kohlsaat president, John B. Waldo secretary and George Schneider treasurer, which persons accepted and entered upon the duties of said offices, respectively, and so continued. August 18, 1892, at a meeting at which all of said directors and officers were present, a resolution was unanimously adopted which provided that the auxiliary association should enter into a contract with complainant to act as its architect and perfect building plans, and have general supervision of the Press Club building then contemplated by said auxiliary association, for the compensation of five per cent of the estimated cost of said building, and thereupon said auxiliary association, acting by its directors and officers, as aforesaid, so retained and employed complainant to perform said services and for said compensation, and complainant accepted said employment. It is then averred that complainant, by October 1, 1892, had completed preliminary plans for the building, which were accepted, and that he made working plans, and submitted an estimate that the cost of the building would be $125,000, which was accepted, etc. (It is unnecessary to refer to the averments of all the services performed by the complainant, as it is not contended that he did not render services as claimed, or that the sum decreed by the court to be paid to him is excessive.)

"In the early part of 1893 the auxiliary association, by reason of financial embarrassment or for some reason unknown to complainant, abandoned the erection of the proposed club building and notified the complainant that it was unable to proceed, etc. Complainant then avers that the work he had done was worth the agreed price, etc., and that December 1, 1892, the auxiliary association paid him $1000 but has since refused to pay him any more, and that the auxiliary association is insolvent. The prayer is that an account

be taken and that the individual defendants be decreed to pay, etc.

"March 15, 1899, appellants and other defendants filed a joint and several answer to the amended bill, not on oath, as their oath was waived, denying all the material allegations of the bill, and averring, in substance, among other things, that the complainant was one of the originators and prime movers of the proposal to form a corporation and was thoroughly conversant with all the steps taken and which remained to be taken in the formation of said corporation, and was present at all the meetings at which any matter connected with said proposed corporation was acted on, and well knew of all that was lacking to complete said proposed corporation, etc. A replication was filed to the answer, and the cause was referred to the master to take evidence and report his conclusions of law and fact. The master reported adversely to the complainant and recommended that the bill be dismissed. Objections were filed to the report before the master, which he overruled and which the court ordered to stand as exceptions on the hearing, a number of which exceptions the court sustained and overruled others. Among those overruled are complainant's exceptions 1, 2 and 8, which are as follows:

" '1. For that said master finds and states in his said report that the organization of the said Chicago Press Club Auxiliary Association was the result of a suggestion made by complainant, for the reason that there is no evidence showing or tending to show the same.

" '2. For that the said master finds and states in his said report that said complainant advised the organization of the Chicago Press Club Auxiliary Association for the purpose for which it was thereafter organized, for the reason that there is no evidence tending to show the giving or offering any advice by said complainant except in the architectural work of the construction of the proposed Press Club building.

" '8. For that the said master finds in his said report that the said Gay, on August 18, 1892, knew that the charter from the Secretary of State of the said corporation had not been received or recorded, as there is no evidence showing or tending to show such knowledge of the complainant.'

"The court, by its decree, dismissed the bill without costs as to the defendants Packard, Johnson and Waterloo, found there was due to the complainant $2070, and decreed that, under section 16 of the act concerning corporations, the defendants Kohlsaat, Waldo, Knox and Gibbs were, as officers and directors of the auxiliary association, liable to complainant, and adjudged and decreed accordingly."

KRETZINGER, GALLAGHER, ROONEY & ROGERS, for plaintiff in error.

McCULLOCH & McCULLOCH, and JOSIAH BURNHAM, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The evidence shows, and the master found, that the complainant, and all those connected with the organization of the Chicago Press Club Auxiliary Association, were members of the Chicago Press Club, which was a corporation not authorized to acquire and hold real estate, and that the auxiliary association was proposed to be organized and incorporated for the sole purpose of erecting a building for the use and benefit of the Chicago Press Club; that the attempted organization of the auxiliary association was the result of a suggestion made by complainant for that purpose; that while complainant did not actively participate in the organization of the auxiliary association as a member thereof, he aided in its organzation by his advice and counsel. The by-laws adopted by the auxiliary association provided that its capital stock should consist of ten shares of the par value of $100 each; that its membership should consist of ten members of the Press Club, who should hold the stock in equal

shares, and that said ten members of the auxiliary association should be elected from a list designated by the Press Club. The by-laws further provided that by a vote of not less than six, any member of the auxiliary association might be deprived of his membership and stockholding; that vacancies in the membership should be filled from members of the Press Club, and that outgoing members should transfer their stock to their successors. The master further found and reported: "None of the members of the auxiliary association really owned any stock. It could not be sold or transferred to anyone who was not so selected from the membership of the Press Club, and if a holder had died, his estate would have received nothing. It does not appear that any of the subscribers for stock, or holders thereof, ever paid anything for the stock. In fact, it was all held by these men as agents or trustees for the Press Club, and the association was really only the creature of the Press Club, being an instrument to be used in obtaining a building for the Press Club, and the said complainant was aware of these facts." These findings of the master were sustained by the evidence and justified his conclusion that the auxiliary association was really but an agent of the Press Club, to do for said Press Club what it could not lawfully do for itself.

It is clearly shown by the evidence that in addition to the complainant being the author of the scheme to provide a building for the Press Club, he was informed of the status and acts of the auxiliary association all the time, and that he was notified of most, if not all, its meetings, and attended many of them, and knew August 18, 1892, when the resolution was adopted that the auxiliary association enter into a contract with him, as architect, to perfect plans and have general supervision of the erection of a building, that said auxiliary association had not received its charter from the Secretary of State, and was therefore not a corporation. He was present at this meeting, but left the room as the vote was about to be taken on the resolution. After the vote was

taken he returned to the meeting and asked for a copy of the resolution. The evidence shows that complainant manifested considerable interest in hastening the incorporation, and the master finds that after the meeting of August 18, 1892, he complained of the slow progress in completing the incorporation. This finding was not excepted to by complainant. He did except, among others, to the findings of the master that the organization of the auxiliary association was the result of his suggestion; that he advised its organization for the purpose for which it was organized, and that he knew, on August 18, 1892, that the charter from the Secretary of State had not been received or recorded. These exceptions were overruled by the trial court, and no cross-errors have been assigned by complainant upon such ruling. He is therefore deemed to have acquiesced in the findings of the court upon these propositions. (*Vose* v. *Strong,* 144 Ill. 108.) Complainant knew that the capital stock of the auxiliary association was only $1000, and that its only means of obtaining money to erect the proposed building was by the sale of bonds. Frank E. Johnson, originally a defendant to the bill in this case but as to whom the decree of the circuit court dismissed the bill, testified he told complainant, at the time of the meeting August 18, 1892, that the action in adopting the resolution was hasty and would do complainant no good, because the association was not a corporation yet, and that complainant replied, the prestige and standing of the club would bring the money end around all right. According to Johnson's testimony, complainant more than once inquired concerning the completion of the corporation, and manifested irritation at what he thought the slow methods of the members of the auxiliary association in completing the incorporation. It is true, complainant denies much of the testimony of Johnson, but the weight of the evidence shows that though not a member of the auxiliary association, he, as a member of the Chicago Press Club, in addition to advising the incorporation of the auxiliary association, was

much concerned in the project for the erection of the proposed building. If the building was erected he expected to get the contract as the architect to design and superintend its construction, and in his communication to the auxiliary association, at its meeting August 18, 1892, proposing to render the architectural services for five per cent of the cost of the building, he stated, but not as a part of his proposition to do the work, that as he desired to do all he could to promote the success of the enterprise, he would take as part pay for his services $1500 in bonds issued by the association.

Without further adverting to the testimony, it seems clear the allegation in complainant's bill that he was "led by said defendants, and each of them, to deal with said Chicago Press Club Auxiliary Association, in matters hereinafter mentioned, as a corporation in fact and in law, knowing naught to the contrary," is not sustained by the evidence. The sole purpose of the proposed incorporation of the Chicago Press Club Auxiliary Association was to enable the Chicago Press Club to evade the law by doing through its creature, which the master aptly characterizes as a "dummy," what the law forbade it doing directly, and act in palpable violation of the spirit of the law while pretending to comply with its letter. No one was more familiar with these facts than complainant.

It is not necessary, however, in the view we take of this case, for us here to determine whether a party equally responsible with others for such attempted evasion of the law, may under any circumstances resort to the remedies provided in either section 16 or section 18 of the statute hereafter quoted. This proceeding is a bill in chancery to establish liability under section 16 of the act on corporations. It reads: "If the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation, assenting thereto, shall be personally and individually liable for such excess, to the creditors of such corporation." Section 18 of the same chapter

reads: "If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation, or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation." (Hurd's Stat. 1905, p. 500.)

We agree with the Appellate Court that section 16 does not embrace associations exercising corporate powers without legal authority so to do, but refers only to *de jure* corporations. It will be observed the language is not, that if the indebtedness of any "pretended" stock corporation shall exceed the capital stock the directors and officers of such "pretended" stock corporation assenting thereto shall be liable, but the word "corporation," without qualification, is used throughout the section. Section 18 provides a remedy against persons presuming to represent and act for a pretended stock corporation without having complied with the provisions of the act concerning corporations. The two sections were obviously meant to apply to different conditions. There can be no indebtedness of a corporation until there is a corporation. (*Gent* v. *Manufacturers' and Merchants' Ins. Co.* 107 Ill. 652; *Loverin* v. *McLaughlin*, 161 id. 417.) An indebtedness incurred before the incorporation of an association is not the indebtedness of a corporation, but may be of the members of the association unlawfully pretending to exercise corporate powers. The question here is entirely different from the question considered by this court in *Streator Tel. Co.* v. *Construction Co.* 217 Ill. 577. There the corporation after its organization received a telephone exchange and lines constructed under a contract with the promoters of the corporation before its organization was

complete, and it was held the corporation was liable for the balance due on the contract for construction. The object and purpose of section 16 was to protect creditors of corporations, and we find in it no intimation of any application to a person, or an association of persons, wrongfully assuming to exercise corporate authority and thereby incurring indebtedness. By this section creditors are protected against *de jure* corporations where they incur indebtedness beyond their capital stock. By section 18 creditors are protected against persons contracting an indebtedness by unlawfully pretending to exercise the functions of a corporation. If the case sought to be made by plaintiff here is embraced in the provisions of section 16, then it would seem that section 18 is superfluous. There is no conflict between the two sections, each providing a remedy under the particular circumstances embraced within its provisions, and the rule of construction that all the parts of an act relating to the same subject, where not in conflict, shall be sustained, forbids holding that either section is meaningless. "Statutes should be so construed that effect may be given to all of their provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." (2 Lewis' Sutherland on Stat. Const.—2d ed.— sec. 380.) *Lewis* v. *Montgomery,* 145 Ill. 30, was a suit to enforce a liability under section 16, and it was there said: "In *Woolverton* v. *Taylor,* 132 Ill. 197, the statute sought to be invoked here was under consideration, and we there held, that while the liability imposed is not penal, but contractual, it is like that of a surety, and therefore *stricti juris.* This being the case, the statute should receive a construction in consonance with the nature of the obligation imposed. The words employed should be interpreted according to their plain and obvious meaning, and should not be extended by construction so as to embrace cases not clearly within the terms of the statute." It is not claimed by complainant that he is entitled to relief under the provisions of section 18, as

under said section the action must be at law, (*Loverin* v. *McLaughlin, supra,*) while under section 16 the action is by a bill in equity. *Lowe* v. *Buchanan,* 94 Ill. 76; *Woolverton* v. *Taylor,* 132 id. 197.

The authorities which hold that parties holding out an association as a legally organized corporation and incurring indebtedness to innocent parties on the faith of such representations cannot, as against such creditors, be heard to deny the legality of the corporation, are not applicable to this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*