Walsh, Appellant, *v.* Hallstead et al.

Argued March 7, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*W. A. Bissell,* of *Stark, Bissell & Reifsnyder,* for appellant.

*Ralph W. Rymer,* for appellees.

OPINION BY KELLER, P. J., April 22, 1940:

Plaintiff sued the defendants individually and as partners for services rendered in July, August and September, 1930, and in July and August, 1932. The defendants, in their affidavit of defense, denied that they were partners, and averred that any services rendered by plaintiff were performed for a Delaware corpo-

ration known as R. A. Blackwood & Company, the corporate name of which had been changed to Anthracite Drilling Company.

To make out his case, the plaintiff, who did not take the stand himself, called William Hallstead, one of the defendants, who testified that he had been treasurer and George Mott had been president of R. A. Blackwood & Company; that they two and R. A. Blackwood were directors of the corporation; and that he and George Mott remained associated with it after its name was changed to Anthracite Drilling Company. In answer to the question, "Did you personally hire him [plaintiff], Mr. Hallstead?" he replied, "I did not". This, together with the certificate of the Secretary of the Commonwealth that the records did not show a registration of the Anthracite Drilling Company as a foreign corporation under the provisions of the Act of June 8, 1911, P. L. 710 or of the Act of May 5, 1935,[1] P. L. 364, or under the Fictitious Names Act of June 28, 1917, P. L. 645, constituted the plaintiff's case.

It appears from defendants' exhibits that R. A. Blackwood & Company was incorporated in Delaware in 1923 by individuals other than these defendants, (28a-35a), and that the name of the corporation was changed in 1930 to the Anthracite Drilling Company, and the certificate of amendment filed in Delaware (35a-38a). It is stated in the appellee's brief (p.1) that R. A. Blackwood & Company was registered in Pennsylvania as a foreign corporation. This fact does not appear in the record, but the result is not affected by it. It is admitted that the change of name was not registered in Pennsylvania.

It also appears *in the evidence adduced by the plaintiff* that he was working for R. A. Blackwood & Company when the defendants became officers of it, and

---

[1] Should be 1933—Certificate (27a) is incorrect.

that he merely continued doing so; as he also did (except for a cut in salary) after the change in the corporate name. There is no evidence to the effect that either defendant entered into any contract with the plaintiff to work for the corporation, or for them personally; or that they held themselves out to him or to any one else as partners; or that the plaintiff did not know that he was working for a corporation.

After a formal directed verdict for the plaintiff, and a reservation of defendant's point for binding instructions, the lower court entered judgment n. o. v. for the defendants, on the ground that plaintiff "did not prove that he was under any impression or idea that he was working for the defendants individually," rather than for the corporation. The plaintiff appealed.

The lower court was clearly right; and as President Judge LEACH says in his opinion, the case is ruled by *Bala Corp. v. McGlinn*, 295 Pa. 74, 144 A. 823. In that case, a contract had been made between the plaintiff and an unregistered foreign corporation. The plaintiff asserted a joint personal liability against the defendants, two of whom had executed the contract for the corporation, and the other of whom was the president of the corporation. The defendants were held not personally liable, the court saying, at pages 78 and 80:

"This [Act of June 8, 1911, P. L. 710] expressly repeals the Act of April 22, 1874, P. L. 108, and somewhat modifies the status of an unregistered foreign corporation, validating its contracts, subjecting it to suit in this State, also enabling it to sue here upon compliance with the statute.

"While plaintiff denies knowledge of the fact that the Merrill Realty Corporation was not registered, it knew the contract was with the corporation, and, under the Act of 1911, was not prejudiced by its failure to register. Plaintiff, having knowingly dealt with the corporation as such and having full right of action against it, there is no reason why the officers, who are

charged neither with fraud nor falsehood, should be held individually liable. The cases where such liability has been sustained were under the Act of 1874 and are based largely upon the fact that the plaintiffs contracted with individuals and were ignorant of a corporate existence.

"In view of the fact that the Act of 1911 accords a nonregistered foreign corporation a quasi legal status, although incapable of bringing suit here until compliance with its provisions and also that plaintiff had knowledge of the corporate existence of the Merrill Realty Corporation and contracted with it as such, the officers who acted for it and in its name are not individually liable for a breach of its contract. The mere fact that the agents might be punished for neglecting to register would not render them liable for the contracts of the corporation."

Plaintiff does not rely on the Act of June 8, 1911, P. L. 710,—which requires foreign corporations to register before doing business in Pennsylvania—as imposing liability on the defendant, but on a common law principle that one purporting to be an agent, who fails to bind his principal, binds himself. The difficulty with his position is that, as pointed out in the quotation above, an unregistered foreign corporation is now bound on contracts entered into by it and can be sued on them, while that was not true under the Act of April 22, 1874, P. L. 108: *Lasher v. Stimson,* 145 Pa. 30, 23 A. 552. The Pennsylvania cases on which plaintiff relies [2] were all cited by the appellant (plaintiff), or discussed by the court in deciding against it, in *Bala Corp. v. McGlinn,* supra; and all, except *Con-*

---

[2] *Lasher v. Stimson,* 145 Pa. 30, 23 A. 552; *Guckert v. Hacke,* 159 Pa. 303, 28 A. 249; *Raff v. Ismart,* 235 Pa. 347, 84 A. 352; *Bond v. Stoughton,* 26 Pa. Superior Ct. 483; *Stephenson v. Dodson,* 36 Pa. Superior Ct. 343; *Stoner v. Phillipi,* 41 Pa. Superior Ct. 118; *Consolidated Cigar Corp. v. Corbin,* 285 Pa. 273, 132 A. 364.

*solidated Cigar Corp. v. Corbin,* 285 Pa. 273, 132 A. 364, arose prior to the Act of 1911. In the last named case, there was no proof in the record of the existence of the corporation at the time the goods were delivered to the defendants; and the record contained admissions that defendants had acted as individuals and not as officers of the alleged corporation in the receipt of the goods. In the present case there is no question that there was actually a Delaware corporation.

We have treated the case as though the corporation, R. A. Blackwood & Company, was not registered in Pennsylvania, because there is no evidence in the record that it was so registered. If it was, as the appellees state in their brief, then the only thing that was not done was to have the corporate name changed on the Commonwealth's records, after it was duly changed in the State of its incorporation. Our examination has disclosed no case bearing directly on the consequences of a failure to register the change of name of a foreign corporation; and our attention has been directed to no statute prior to the Act of May 5, 1933, P. L. 364, which required a foreign corporation to register or record such a change of name in this state. Certainly there was none which made the officers of the corporation individually liable as partners for a failure to register such change. No such penalty is imposed under the Act of May 5, 1933, P. L. 364 (see sections 1007, 1008, 1013 and 1014), which, in section 1202, repealed the Act of June 8, 1911, P. L. 710 (the statute in force when the cause of action accrued) and its amendments of July 17, 1935, P. L. 1123, sec. 1, and July 2, 1937, P. L. 2828, sec. 1. Under the new act, failure to register a change of name of a registered foreign corporation, is ground for revoking the corporation's certificate of authority (sec. 1013), but it does not subject the agents, officers, etc. of the corporation to fine or imprisonment as would failure to register and secure a certificate of authority (sec. 1014). The Act of 1933 also provides, in sec.

1014, as did the Act of June 8, 1911, P. L. 710 in section 4, as amended by the Act of April 22, 1915, P. L. 170, that the validity of contracts with a foreign corporation shall not be affected by its failure to register.

The judgment is affirmed.