Harry McGuire, Appellant, v. Outdoor Life Publishing Company, et al., Appellees.

Gen. No. 9,593.

Heard in this court at the October term, 1940. Opinion filed August 7, 1941.

HALL & DUSHER, of Rockford, for appellant.

KARL C. WILLIAMS, of Rockford, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On November 12, 1937 a complaint was filed by Harry McGuire in the circuit court of Winnebago county against Outdoor Life Publishing Company, a corporation, and certain individuals who were directors of said corporation, seeking to recover damages for an alleged breach of a written contract of employment between the plaintiff and the defendant corporation.

Upon filing the complaint and pursuant to request, a summons was issued and returned showing service on the corporate defendant by serving J. W. Watt, its president, and further showing service upon all the individual defendants except W. A. Mueller who was not served. The corporate defendant and each of the individual defendants who had been served entered a special and limited appearance and filed a motion to dismiss the complaint, alleging that the court had no jurisdiction of the person of the defendants or of the subject matter of the suit. The motion to dismiss set forth as reasons therefor that the individual defendants were residents of the county of Ogle and that the transaction out of which the cause of action is alleged to have arisen did not occur in Winnebago county, and that the principal office of the corporate defendant was not in Winnebago county, Illinois, that

it was not doing business in Winnebago county, Illinois before and at the time of the commencement of the action, and that the alleged transaction out of which the cause of action arose, nor any part thereof, occurred in Winnebago county, Illinois. The plaintiff thereupon filed his cross motion asking that in event it was found that the venue of the cause was not properly in Winnebago county, that the court order the venue changed to Ogle county. Upon a hearing, the motion of the defendants to dismiss the suit was overruled, and the plaintiff's cross motion for change of venue to Ogle county was sustained and the cause was transferred to Ogle county, where the defendants were ordered to plead or answer.

The Outdoor Life Publishing Company, by J. W. Watt, its president, the corporate defendant and also the several individual defendants again entered a special and limited appearance in the circuit court of Ogle county, and moved the court to dismiss the complaint as to the individual defendants; first, because the cause of action set forth in the complaint purports to be founded upon a written contract of employment entered into between the plaintiff and the Outdoor Life Publishing Company, a Colorado corporation, which contract was executed in the State of Colorado; and, second, because there are no allegations in the complaint to the effect that any of the individual defendants undertook any personal obligation with respect to the employment of the plaintiff. While this motion was pending, the corporation defendant, by its attorney, filed a demand for a jury trial. Thereafter this corporate defendant filed its motion to quash the summons on the ground that it was a foreign corporation, not licensed to do business in Illinois, and that J. W. Watt was never the registered or authorized process agent of said corporation in Illinois, and that said corporation was not doing business in the State of Illinois at the time of the service of summons or at the

time of the commencement of the suit or for three years prior thereto. This motion purported to limit the appearance of this defendant for the purpose of the motion only. Attached to this motion was an affidavit of Watt, stating that the corporation had sold all its assets to another foreign corporation on or about May 1, 1934, since which time it had done no business in this State; that it was doing no business in Illinois at the time the summons was served and had not for three years prior thereto; and that the corporation never had any certificate of authority to do business in Illinois, nor any registered or designated agent for service of process in this State. The plaintiff then filed a verified motion in opposition to the motion to quash, traversing certain allegations therein and alleging facts in support of his claim that the service was legal. A hearing was had, resulting in the motion to quash being sustained and an order entered abating and dismissing the suit. To reverse this order, the plaintiff has appealed.

The complaint avers the directors adopted a resolution on May 9, 1931, in the State of Colorado, to the effect that appellant was employed as editor of the magazine "Outdoor Life" for a period of five years beginning January 1, 1932, at a salary of $8,000 per annum, and a bonus under certain conditions; that the corporation communicated the offer to him by letter directed to Paris, France; that he accepted the offer by telegram and by letter, mailed at Gunnison, Colorado, directed to the corporation at Mt. Morris, Illinois; that on January 1, 1932 he entered upon his duties under the contract and continued to fulfill such duties according to the contract until July 1, 1934, when he was discharged without legal reason; that his services were availed of by the corporation and the individual defendants in this State, where they were unlawfully carrying on the business of the corporation; that such services were performed by their di-

rection; and that he first learned on October 1, 1937 that the corporation was not authorized to do business in this State. The complaint sets out the official capacities of the individual defendants in connection with the corporation, and alleges their liability on account of their having been parties to and assisting in carrying on the business in this State without the corporation being authorized to do business in Illinois and that it has an office in Mt. Morris, from which it transacts business.

The proofs under the motion to quash and the cross motion show the office and business of the corporation was moved in 1931 from Denver, Colorado, to Mt. Morris, Illinois, where the magazine had been printed since 1924 or 1925. J. W. Watt was elected president in February 1934. There has been no election of officers since that time. On May 31, 1934, the corporation sold its property, except office furniture, accounts and notes receivable, premiums and book inventories, to Popular Science Publishing Company. This was one month prior to appellant's discharge. There was no subsequent meeting of the board of directors. The corporation last published the magazine in June or July 1934, gave up its office in Mt. Morris on September 1, 1934, and Watt testified it had no other offices; that its bank account in Mt. Morris was closed on December 13, 1935, and it had no bank account outside this State; that the last time he wrote a letter on behalf of the corporation or used its letter head was in 1934 or 1935; that he had some of the corporation's books in his office and the account books were in the hands of auditors who had been auditing the books; that other books were either in the hands of the corporation's Chicago attorney or had been sent by him to the attorney conducting the trial and that the books and records of the corporation had been in this State since the company started doing business. The record further discloses that on May 19, 1937, the corpora-

tion, by its vice-president and its secretary, made a report at Mt. Morris, Illinois to the Secretary of State of Colorado, which was filed June 8, 1937. This report contained a statement of the amount of the capital stock of the company, named the officers and directors, gave their addresses as Mt. Morris, Illinois, and stated that the corporation was not engaged in active business in Colorado or elsewhere, and had not engaged in business for more than two years. It showed an accompanying payment of $44.52 license and penalty tax for the years 1936 and 1937, but the source of the payment is not shown by the testimony. The report named Cyril Shraiberg as the Colorado agent upon whom process could be served.

When the corporation alleged in its motion to quash that it was not doing business in Illinois at the time the summons was served, it assumed the burden of proving that affirmative defense. While the testimony shows some things the corporation did and some things the president did not do, it also shows the account books of the corporation were in the hands of auditors who did that kind of business for the corporation. Their possession of the books is not explained. Although the corporation sold the major portion of its assets on May 31, 1934 to another foreign corporation, it was still doing corporate business in Illinois by making the report to the Secretary of State of the State of Colorado less than six months before this suit was started. No showing was made as to whether the notes and bills receivable had all been collected or were in process of collection, but it does appear that the office furniture, accounts and notes receivable were not disposed of but were retained by the appellee corporation. By its contract of sale to the Popular Science Publishing Company, the corporate appellee agreed to protect its vendee from all of its liabilities, which were not specifically assumed by the vendee as part of the purchase price and its alleged liability to appellant

was not specifically assumed. Nobody testified the corporation had not done any business since making the report to the Colorado Secretary of State, or that it was not doing any business in this State at the time the summons was served. In our opinion, the corporation did not meet the burden of proof imposed upon it.

First, then, we will consider the alleged liability of the individual defendants. In *Joseph T. Ryerson & Sons Co. v. Shaw,* 277 Ill. 524, it was held that the directors, officers and agents of either a domestic or foreign corporation which has not complied with the law authorizing it to do business in this State are personally liable for debts incurred in carrying on the business of the corporation. Appellees argue that this is no longer the law in this State since the enactment of section 124 of the Business Corporation Act of 1933 (Ill. Rev. Stat. 1939, ch. 32, par. 157.125 [Jones Ill. Stats. Ann. 32.128]), which provides in part: "No foreign corporation transacting business in this State without a certificate of authority shall be permitted to maintain an action at law or in equity in any court of this State, until such corporation shall have obtained a certificate of authority . . . . The failure of a foreign corporation to obtain a certificate of authority to transact business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action at law or suit in equity in any court of this State."

Prior to the enactment of the Business Corporation Act, section 149 of the Corporation Act of 1919 (Ill. Rev. Stat. 1931, ch. 32, par. 149, provided: "If any person or persons being, or pretending to be, an officer or agent or board of directors of any corporation . . . shall assume to exercise corporate powers or use the name of such corporation . . . before it has been authorized to do business, under the laws of this State, then they shall be jointly and severally liable for all

debts and liabilities made by them and contracted in the name of such corporation . . . and suits at law may be prosecuted therefor by creditors individually.'' Appellant's contract with the corporation was made while this section was in force.

The *Ryerson* case, *supra,* was decided before section 149 of the 1919 Corporation Act was enacted. At that time section 18 of the prior Corporation Act of 1872 (J. & A. Anno. Stat. par. 2435) provided: ''If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation . . . shall assume to exercise corporate powers, or use the name of any such corporation . . . without complying with the provisions of this Act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made my them, and contracted in the name of such corporation. . . .'' The Corporation Act of 1872 was repealed by the 1919 Corporation Act.

In *Van Ameringen v. Cohen,* 254 Ill. App. 576, relied upon by appellee, decided in 1929, while section 149, *supra* was in force, it was held that officers of a New York corporation not licensed to do business in Illinois, were not liable on trade acceptances executed in this State to replace prior evidence of indebtedness executed in New York for debts contracted by the corporation in the latter State. The opinion says section 149 is analogous to section 18 of the prior act, and that the courts held section 18 was highly penal in its provisions and should therefore, be strictly construed, citing *M. H. Vestal Co. v. Robertson,* 277 Ill. 425, and *Inter-Ocean Newspaper Co. v. Robertson,* 296 Id. 92; that under such construction the defendants were not liable for the reason that the obligation upon which the suit was brought was not ''made by them,'' and under a strict construction of the statute the creation of the indebtedness was a condition precedent to lia-

bility; and that, on the other hand, if the question was considered on common-law principles such as were followed in the *Ryerson* case, *supra,* the same conclusion must be arrived at since the obligation was created in New York by a New York corporation which had a perfect right to contract and was duly bound by its contract, exercising its powers within the State under whose statutes it came into existence.

An examination of the opinion in the *Vestal* case discloses the decision is not based upon a strict construction of section 18 as highly penal. In that case the stock of a corporation had been subscribed and the certificate of incorporation had been issued but never recorded. The suit was against an officer of the corporation to recover the balance due on printing materials furnished the corporation. The question was whether the suit was to recover a statutory penalty, governed by the two-years statute of limitations, or was a suit on an implied contract or statutory liability, to which the five-years statute applied. In discussing section 18 and holding that the two-years statute of limitations applied, the court said: "It cannot be said that the legislature intended thereby to grant creditors a remedy for the recovery of their claims which the common law does not give them. They had a right of action against the corporators as partners. (*Bigelow v. Gregory,* 73 Ill. 197.) That remedy has been in no way changed or taken away by the enactment of said section 18. (*Loverin v. McLaughlin, supra; Richardson Fueling Co. v. Seymour,* 235 Ill. 319.) The reading of said section indicates a legislative intent to create a liability against the officers and agents of a corporation, jointly and severally, for the general protection of the public. The words, 'shall be jointly and severally liable for all debts and liabilities made by them,' were not intended as the basis for establishing a contractual relation between the officers and the creditors, but were used for the purpose of holding each set of officers and directors responsible

only for the wrongs and omissions occurring while they are in control and imposing a like responsibility and liability on their successors in office. The liability thus created is imposed upon the officers, directors and agents because they permit business to be commenced and liabilities to be incurred in violation of their duty. . . . The conclusion is irresistible that said section 18 is a penal statute and that the right of action thereunder may be barred by the two year Statute of Limitations.'' The statute was not held highly penal nor given a strict construction. On the contrary, although the statute purported to apply to corporations where all the stock had not been subscribed, it was held that the officers, agents and directors would be liable thereunder, although it appeared in that case that the only defect in the corporate organization was a failure to record the certificate. The holding of nonliability was based upon the two-year statute of limitations and not upon a strict construction of the statute. The holding in the *Inter-Ocean* case, *supra,* is merely that section 18 is not applicable to stockholders.

In consonance with the *Vestal* case, the *Ryerson* case, *supra,* holds that the statutory penalty of not less than $1,000 nor more than $10,000 for failure or neglect to comply with the provisions of the act, might be enforced against the corporation, but the liability of the corporation to pay the penalty did not affect the question whether individual rights might be enforced against directors, officers and agents who incur liabilities or make contracts in the name of the corporation. It mentions the fact that there was no statute in this State imposing a liability upon officers or agents of a corporation not permitted to transact business in this State, and holds the liability arose through application of the rules of law under like conditions, which amounts to imposing a common-law liability.

The Business Corporation Act repeals the Corporation Act of 1919, which was in force when appellant's contract was entered into. Section 163 of the act pro-

vides: "The repeal of a law by this Act shall not affect any right accrued or established, or any liability or penalty incurred, under the provisions of such law, prior to the repeal thereof." The Business Corporation Act does not provide for any recovery against officers, agents or directors of a corporation not authorized to do business in this State, but it still contains a penalty by prohibiting such a corporation from maintaining any suit. While it permits such a corporation to defend a suit against it, there is nothing in the act which indicates a legislative intention to bar creditors from a remedy against its officers, agents or directors.

The argument that the contract was made in Colorado between the corporation and appellant, and that the individual defendants were not parties thereto, and did not incur any liability thereunder, is beside the mark. This is not a suit to recover for services performed under the contract, but is directed at the action of all the defendants in discharging appellant. That is the time and the method by which the liability is alleged to have been incurred, and is the basis of the action.

Whether the saving clause in section 163 preserves appellant's rights under the 1919 law, or did not do so because the breach occurred after the 1919 act was repealed, is of no controlling effect in this case. If it preserved them, the liability, if any, was under the 1919 act. If it did not, the liability was at common law, because the Business Corporation Act makes no provision in relation thereto. The language of section 149 of the 1919 act as to liabilities "made by them" is analogous to the language in section 18 of the prior act of 1872. The *Van Ameringen* case, *supra,* is not persuasive here, and section 125 of the Business Corporation Act does not bar any remedy of appellant. *Parker-Holladay Co. v. Bokum,* 252 Ill. App. 135, holding the rule in the *Ryerson* case is a harsh one and

should not be extended unless the law is plain, has no application. Under the holdings in the *Ryerson* case, and in the *Vestal* case construing the meaning of the words "made by them" we are of the opinion the court erred in dismissing the individual defendants.

Whether the service upon the corporation, by serving its president, was or was not sufficient, the demand for a jury trial and its motion to quash the service were each made by its attorneys. Under the settled law this was a general appearance. Pleas to the jurisdiction must be pleaded in person if the party desires to limit his appearance for that purpose. (*Pratt v. Harris*, 295 Ill. 504; *Mineral Point R. Co. v. Keep*, 22 Id. 9; *Audretsch v. Hurst*, 126 Mich. 301, 85 N. W. 746; 4 C. J. Appearances 1333, sec. 27.) Moreover, the service was in compliance with section 17 of the Civil Practice Act (Ill. Rev. Stat. 1939, ch. 110, par. 141 [Jones Ill. Stats. Ann. 104.017].) Section 111 of the Business Corporation Act does not purport to cover cases like this where the corporation was neither authorized to do business in this State, nor had a registered agent.

The order dismissing the individual defendants and the order abating and dismissing the suit are reversed and the cause is remanded to the circuit court of Ogle county with directions to overrule the respective motions of appellees to dismiss the individual defendants and to quash the service and to enter an order directing appellees to answer.

*Reversed and remanded with directions.*