OLLIE J. McATEER et al., Plaintiffs-Appellants, v. MENZEL BUILDING COMPANY, INC., et al., Defendants-Appellees.

(No. 72-30;

Fifth District—August 15, 1973.

Walker & Williams, of Belleville, (Harry J. Sterling, of counsel,) for appellants.

Edward F. O'Malley and Robert Cummings, both of Belleville, for appellees.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by plaintiffs Ollie J. McAteer and Catherine E. McAteer from an order of the Circuit Court of St. Clair County dis-

missing Count II of their amended complaint as to the individual defendants Harry Menzel and George B. Douros. The count sought damages by reason of those defendants having been officers of a Missouri corporation which had no certificate of authority to do business in Illinois, when on behalf of the Missouri corporation, they entered into a contract with plaintiffs in Illinois, for the sale of Illinois real estate.

On or about July 6, 1970, the plaintiffs Ollie J. McAteer and Catherine E. McAteer entered into a contract whereby they were to purchase six parcels of land in Clinton County, Illinois. The agreement was signed in East Saint Louis, and a copy attached to the complaint shows the seller to be "Menzel Building Company, Inc. by George B. Douros, Sec., Harry J. Menzel, Pres." The contract was never performed, and the plaintiffs brought an action for specific performance and damages. It was stipulated by the parties that the count asking for specific performance be stricken.

After a hearing on a motion to strike the count asking for damages, the court dismissed the complaint as to the individual defendants. Plaintiffs appeal from that ruling. It was shown upon the hearing that the Menzel Building Company, Inc. is a corporation organized under the laws of the State of Missouri which had never secured a certificate of authority to transact business in Illinois.

The issue presented for review is, whether the directors and officers of a foreign corporation which has failed to secure a certificate of authority to transact business in Illinois are personally liable for any debts or liabilities of the corporation arising out of such unauthorized transaction of business in Illinois?

The exact question presented on this appeal has not been presented to a Reviewing Court in Illinois during the past thirty years. There are no decisions to be found upon the issue which have been decided under the present Business Corporation Act, (ch. 32, par. 157.1 *et seq.*) adopted in 1933. Thus this is a case of first impression under the present statute. In order to correctly decide the issue, a careful analysis of the legislative history of the present Act must be made, with particular attention being given to court decisions interpreting corresponding sections of prior Acts.

Since the appeal arises from the dismissal of the complaint against the individual defendants, we have only a limited amount of evidence with which to work in the present instance. For the purposes of this opinion we must make several assumptions which we feel are warranted by the record: that the Menzel Building Company, Inc. is a valid corporation lawfully organized under the laws of the State of Missouri; that the power to enter into such a transaction was within the

scope of its corporate charter; that the contract was valid within the laws of both states (sec. 351.385 Mo. Rev. St.; Ill. Rev. Stat., ch. 32, pars. 157.103, 157.125); and that the corporation was actually transacting business in Illinois without having obtained the required certificate of authority. (See *Pennsylvania Company for Insurance on Lives, v. Bauerle* (1892), 143 Ill. 459, 33 N.E. 166; *Calumet Council Building Corp. v. Standard Oil of Indiana* (7th Cir. 1948), 167 F.2d 539.) With these assumptions in mind we can proceed to the disposition of the case.

Plaintiffs ground their claim for damages for breach of contract against the individual defendants upon either Ill. Rev. Stat., ch. 32, par. 157.150 dealing with unauthorized assumption of corporate powers, or Ill. Rev. Stat., ch. 32, par. 157.125, covering the transacting of business without a certificate of authority. Their reasoning is based upon the decisions rendered in *Joseph T. Ryerson and Son v. Shaw* (1917), 277 Ill. 524, 115 N.E. 650 and *McGuire v. Outdoor Life Publishing Co.* (1941), 311 Ill. App. 267, 35 N.E.2d 817 wherein the directors and officers of a foreign corporation doing business in Illinois without having procured the required certificate of authority were held to be personally liable for the debts of the corporation arising out of this illegal activity. An examination must be made of the statutes in effect at the time of these decisions and any subsequent changes in order to determine the present validity of these decisions under the current statute.

In 1917 when the *Ryerson* case was decided by the Illinois Supreme Court, the present Business Corporation Act was not in effect, it having been passed originally in 1933. The predecessor to paragraph 157.150 in effect at this time, was Laws of 1871-72, sec. 18, p. 296, wherein was included personal liability for those who assumed to exercise corporate powers without authority to do so "before all stock named in the articles of incorporation shall be subscribed in good faith * * *". This qualifying language would seem to indicate a legislative intent to limit the application of this section to de facto corporations which have not completed incorporation under the domestic incorporation laws of the State while excluding from its purview de jure foreign corporations which need not subscribe stock within the State in order to qualify to do business there.

This in fact was the very reasoning used by the court in *Plew v. Board* (1916), 197 Ill.App. 408 (aff'd 274 Ill. 232, 113 N.E. 603), where the court said at 410:

> "It is the corporation itself and not its officers or agents that is subject to the penalties prescribed by our act regulating foreign corporation for failure of the corporation to comply with its provisions (Hurd's Rev. St. 1911, Ch. 32, Sec. 67g, J&A Sec. 2531);

and it is too obvious for discussion that section 18 of the General Incorporation Act (J&A Sec. 2435) which makes persons assuming to exercise corporate powers of a corporation liable under specific circumstances for debts contracted by them in its name, has no application to the failure of a foreign corporation to take out a license to do business in this State."

Thus section 18 was considered at that time to be limited to defective domestic corporations which had not fully complied with the General Incorporation Act.

■■■ We note also that the court stated that the penalties of sec. 67g of ch. 32, Hurd's Rev. St. 1911 were applicable to the corporation and not to its officers or directors. This was the section which was the predecessor of the present paragraph 157.125 in effect at this time. There are two aspects of this paragraph which must be noted: (1) as previously shown there is no personal liability imposed by the statute for failure of a foreign corporation to secure the needed certificate; and (2) the statute holds that a non-complying foreign corporation may not maintain any action at law or in equity on any claim either in contract or tort arising during the period of noncompliance. The effect of this latter aspect may be gleaned from the case of *United Lead Co. v. S. W. Reedy Elevator Manufacturing Co.* (1906), 222 Ill. 199, 78 N.E. 567. Quoting with approval *Cincinnati Mutual Health Assurance Co. v. Rosenthal* (1870), 55 Ill. 85, our supreme court said at 222 Ill. 202:

"When the Legislature prohibits an act or declares that it shall be unlawful to perform it, every rule of interpretation must say that the Legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void."

Applying this to the situation before it the court also said:

"The contract upon which this suit was brought having been entered into in this State when appellant was not permitted to transact business in this State, is in violation of the plain provisions of the statute, and is therefore null and void, and no action can be maintained thereon at any time, even if the corporation should at some time after the making of the contract qualify itself to transact business in this State by a compliance with our laws in reference to foreign corporations that desire to engage in business here."

Thus at the time of the *Ryerson* case sec. 18 was held to apply exclusively to domestic corporations, and under sec. 67g of ch. 32 the contracts of the non-complying foreign corporation were null and void, and could

not even be validated by subsequent compliance with the provisions of the act.

The argument was made at 447 in *Ryerson* that sec. 18 is made applicable to unqualified foreign corporations by reason of another section granting foreign corporations equal status with domestic corporations. The court dismissed this contention using much the same reasoning as was seen in *Plew, supra,* and held that sec. 18 was only applicable to domestic corporations. The court found "* * * a marked distinction between wrongfully assuming to exercise corporate authority, against which creditors are protected by section 18 (*Gay v. Kohlsaat,* 223 Ill. 260), and the failure of a duly organized foreign corporation to take out a certificate in this State pursuant to the requirements of the Foreign Corporation Act." (201 Ill.App. at 447-8.) Thus the appellate court held that the individual defendants were not liable under the statute.

The supreme court reversed the decision as to the finding of freedom of liability of the officers of the foreign corporation, but their manner of doing so leaves the reasoning of the appellate court intact. The court here *agreed* that there was no statutory liability for the defendants: "There being no statute declaring a liability of officers or agents representing a corporation not permitted to transact business in this State, the question of the liability of the defendants must depend on the application of rules of law under like conditions." (277 Ill. at 531.) The supreme court then went one step beyond where the appellate court left off and found a liability based on common law principles of agency.

■■ The basis of the decision is found at 277 Ill. 531-532: "The general rule is, that a person who assumes to act for a legally incompetent principal renders himself personally liable to the person with whom he deals unless such person knows of the want of authority, (31 Cyc. 1548) and one dealing with an officer or agent of a foreign corporation cannot be presumed to know that the corporation has not complied with the laws of the State." In so holding, the court specifically excluded that sort of statutory liability which the plaintiff in the case at bar would find helpful to his cause.

The reasoning of the court in reaching that decision was as follows: Since (as previously shown) according to the statute then in effect the contracts of the unqualified foreign corporation were void, the corporation was deemed to have no corporate existence nor power within the State. The statute had rendered it incompetent to contract, any attempt by an officer to enter into a contract in the corporate name was a futile effort, and under common law agency principles the agent was personally liable as attempting to contract for an incompetent principal. The result was personal liability of the officers. The decision seems to be

limited to the situation where the directors or officers entered into contracts which were void under applicable law. (277 Ill. at 532.) As we shall see later, this is the main reason why plaintiff's reliance upon *Ryerson* is unsound when considered in light of the present statute.

In 1919 secs. 67g and 18 were repealed and replaced by Act June 28, 1919, Laws of 1919, p. 312, secs. 94 and 149 respectively. These statutes evidenced apparent legislative approval of the *Ryerson* decision. Section 149 followed its predecessor sec. 18 in that no mention was made regarding its possible application to foreign corporations. Similarly sec. 94 retained the provision voiding the contracts of the non-complying foreign corporation while making no mention of any possible statutory liability for individual officers or directors. It thus left intact the basis upon which *Ryerson* was decided.

Under these statutes, the reasoning of the *Ryerson* case was approved on several occasions. (*Critchfield and Co. v. Armour* (1923), 228 Ill.App. 28; *Parker-Holladay Company v. Bokum* (1929), 252 Ill.App. 135.) Independently of the question of foreign corporations, *Ryerson* has been cited for the agency principle upon which it is actually based. (*Riley v. Bondi* (8th Cir., 1933) 64 F.2d 515.) On occasion it has been misinterpreted as in *Bradford v. Harbor Belt R.R. Co.* (7th Cir., 1927), 16 F.2d 836 wherein the court held that despite the explicit language in *Ryerson* and prior cases, contracts of unqualified foreign corporations are not void but merely voidable, at least at the choice of the other party.

In 1933 the statutes were again changed and the 1919 acts were repealed in favor of the Business Corporation Act. (Ill. Rev. Stat. 1969, ch. 32, pars. 157.1-157.167.) This is the present statutory package with which we are dealing in this case. Under this Act, section 149 of the 1919 Act was repealed and replaced by a shortened version—par. 157.150. The main change as regards this decision was made to the former section 94 by the new paragraph 157.125. Two major modifications were made which changed the entire tenor of the section: (1) the new paragraph states that no suit may be brought by the unqualified foreign corporation *until* the certificate of authority is obtained, thus removing the former absolute bar to such actions; (2) paragraph two of the paragraph states that the failure to secure the certificate will not impair the validity of any contracts of the corporation, thus explicitly reversing the philosophy of the section it replaces.

The second case which appellant relies upon heavily, *McGuire v. Outdoor Life Publishing Co., supra,* was decided after the present act went into effect. However, the contract upon which the claim arose was entered into before the passage of the present statute and was therefore governed by the 1919 provisions. The court held that the question of

whether the 1919 or 1933 law applied was not controlling. While apparently holding for personal liability under the 1919 Act, the court stated that if the 1919 Act did not apply, liability would be at common law since the Business Corporation Act does not make any provisions regarding such personal liability, thus implying an extension of *Ryerson*. The court went on to say that paragraph 157.125 of the act did not bar any remedy of the appellant in that case. 311 Ill.App. at 278.

■■ It is apparent that the court in the *McGuire* case did not take full cognizance of the changes rendered by the 1933 law. The fact that the contracts of the corporation are held to be valid under the present act seems to completely undermine the basis of the *Ryerson* decision. Now, the corporation is *not* prevented from contracting; it is no longer a legally incompetent principal. Therefore it would logically seem to follow that the officers of a foreign corporation would no longer be personally liable.

■■ We agree with the criticism contained in the Comment to sec. 125 of the *Business Corporation Act Annotated* 1947. Speaking of the *McGuire* decision, the comment states, at 410-11:

> "The validity of the decision seems doubtful since the actual basis of the *Ryerson* case was that under the common law a person who assumes to act as agent for a legally incompetent principal renders himself personally liable to the person with whom he deals and that such common law 'rule ought to be applied to directors and officers of a corporation prohibited from doing business in this State where they participated in making the contracts void by our law'.

> The present Act repealed section 128 of the 1919 Act, which had prohibited a foreign corporation from transacting business in this State until franchise taxes and fees were paid. The present Act also made contracts of unlicensed corporations valid. It thus cut the ground from under the *Ryerson* case, on which the *McGuire* case was based. In the *McGuire* case, the court might well have found that the present Act did indicate a legislative intention to bar creditors of such a corporation from a remedy against its officers, agents or directors."

■■ To hold that the individual directors and officers of the unlicensed corporation are individually liable, would be to ignore the plain meaning of the statute and to disregard the purposes for which it was adopted. This construction is also consistent with the comments to the Model Business Corporation Act Annotated 2nd Ed. vol. 2, section 124, 1971 covering the sections which are almost identical to the Illinois sections.

■■ It also follows the great weight of authority in the area "It is the majority rule that, in the absence of definite statutory authority therefor,

officers, stockholders, incorporators, or other persons contracting for or on behalf of a non-complying foreign corporation cannot be held liable on its contracts as partners". Fletcher's Cyclopedia Corporations, 1969 Rev. Vol., Vol. 17, ch. 67, section 8524, p. 748; see also 36 Am.Jur.2d p. 437 (Foreign Corporations sec. 427); 20 C.J.S. Corporations sec. 1860, p. 86.

An analogy to a parallel situation may be drawn upon as a further basis upon which to ground this decision. The court in *Ryerson* noted that the reasoning they were applying had been used under similar circumstances by other courts. In particular, it alluded to several Pennsylvania decisions, particularly *Lasher v. Stimson* (1892), 145 Pa. 30, 23 A. 552 and *Raff v. Isman* (1912), 235 Pa. 347, 84 A. 352 wherein the Pennsylvania Supreme Court held individual officers of foreign corporations liable under the incompetent principal theory 277 Ill. at 532-533. The Pennsylvania statute in effect at the time of those decisions voided the contracts of such unlicensed corporations as did the old Illinois statute. But in 1911, a new statute was passed in Pennsylvania which granted validity to such contracts. In interpreting this section, the Pennsylvania Supreme Court said: "This expressly repeals the Act of April 22, 1874, P.L. 108, and somewhat modifies the statute of an unregistered foreign corporation, validating its contracts, subjecting it to suit in this state, also enabling it to sue here upon compliance with the statute". (*Bala Corp. v. McGlinn* (1929), 295 Pa. 74, 75, 144 A. 823, 824.) Thus the Pennsylvania statute of 1911 had the same effect on the law of that state as the 1933 provisions have on Illinois law.

■■■ Upon reaching the merits of the case the court said: "Plaintiff, having knowingly dealt with the corporation as such and having full right of action against it, there is no reason why the officers, who are charged neither with fraud nor falsehood, should be individually liable." * * * "Furthermore, it is a general rule that one who deals with a corporation, knowing it to be such, cannot enforce an individual liability against the officers or agents who act for the corporation." (144 A. at 824.) Followed in *Walsh v. Hallstead* (1940), 140 Pa. Super. 13.

■■ Since we see no reason to distinguish the Pennsylvania situation from our own, we adopt the holding and reasoning of the Pennsylvania Supreme Court on this matter. Applying that decision to the merits of this case, no cause of action is shown to exist against the individual defendants.

Therefore the order to strike the complaint as to the two individual defendants is affirmed.

G. MORAN and JONES, JJ., concur.