UNITED STATES of America

v.

Ronald L. DAUGHERTY and Thomas E. Daugherty, Individually and d/b/a Daugherty & Daugherty Construction Co., Inc., and Daugherty Brothers Construction, Inc.; Daugherty & Daugherty Construction Co., Inc. and Daugherty Brothers Construction, Inc.

No. CIV. 3–84–12.

United States District Court, E.D. Tennessee, N.D.

Dec. 3, 1984.

Robert S. More, Sp. Asst. U.S. Atty., U.S. Dept. of the Interior, Knoxville, Tenn., for plaintiff.

Charles Wagner, Knoxville, Tenn., for defendants.

## MEMORANDUM

HULL, District Judge.

Pursuant to the Surface Mining Control and Reclamation Act of 1977 [the Act], 30 U.S.C. §§ 1201–1328 (Supp.1984), plaintiff brought a civil action for collection of civil penalties assessed against Daugherty and Daugherty Construction, Inc. [hereinafter D & D]; Daugherty Brothers Construction, Inc. [hereinafter DBC]; Ronald L. Daugherty, individually and doing business as DBC; and Thomas E. Daugherty, individually and doing business as D & D. By order of the Court entered August 7, 1984 [No. 43], summary judgment for plaintiff was granted as to D & D and DBC. The case is now before the Court on cross-motions for summary judgment on the issue of the liability of the individual defendants for the corporate debt.

Both D & D and DBC were assessed civil penalties for surface mining violations in 1979 and 1980. Plaintiff seeks to "pierce the corporate veil" and hold defendants individually liable for the corporate debt on several theories. First, plaintiff contends that under the "identity theory" of piercing the corporate veil Ronald Daugherty is liable for the corporate debt because (1) he was the sole shareholder, director and stockholder of DBC; (2) he conducted the business of the corporation in violation of the bylaws; (3) he exercised exclusive control of the corporation and acted without authority; and (4) he used corporate property for personal business. Second, plaintiff contends that under the "alter ego" theory of piercing the corporate veil, defendant Thomas E. Daugherty is liable for the corporate debt because (1) he conducted the business of the corporation in violation of the bylaws; (2) he exercised dominant control of the corporation; (3) no stock dividend was paid; and (4) he loaned money to the corporation and guaranteed the debts of the corporation. Third, plaintiff argues that defendant Thomas E. Daugher-

ty is liable for the corporate debt because D & D was a foreign corporation[1] not qualified to do business in Tennessee.

■ The Court first will address plaintiff's theories of liability with respect to defendant Thomas Daugherty. This Court previously has addressed the issue whether under Tennessee law a shareholder, officer, or director of a foreign corporation not qualified to do business in Tennessee is liable for a corporate debt, arising out of a transaction of business in the state. In *United States v. Ryan*, Civ. No. 3–83–130 (E.D.Tenn. Sep. 28, 1984), this Court held that a shareholder, officer, or director of a nonqualifying foreign corporation is not liable for the corporate debt. The Court reasoned that enactment of the Tennessee General Corporation Act, Tenn.Code Ann. §§ 48–101 to 48–1407, specifically sections 48–1106(1), (3), abrogated pre-Corporation Act case law which held the shareholder, director, or officer of a nonqualifying corporation liable for the corporate debt. Although the Tennessee courts have not addressed the issue, the decision is consistent with the decisions of courts of states which have adopted corporation acts similar to the Tennessee act. *See e.g., National Ass'n of Credit Management v. Burke*, 645 P.2d 1323, 1325, 26 (Colo.App.1982); *Mysels v. Barry*, 332 So.2d 38 (Fla.App. 1976); *McAteer v. Menzel Building Co., Inc.*, 300 N.E.2d 583, 13 Ill.App.3d 394 (1973). Thus, the failure of D & D to qualify to do business in Tennessee does not subject Thomas Daugherty to liability for the corporate debt.

■ The question whether Thomas Daugherty may be held liable for the corporation debt under the "alter ego" theory of piercing the corporate veil must be determined with reference to the law of Kentucky because D & D was incorporated in that state. Kentucky courts generally have displayed an aversion to any disregard of the corporate entity. *Thermothrift Industries, Inc. v. Mono-Therm Insulation Systems, Inc.*, 450 F.Supp. 398, 405 (W.D.Ky.1978). However, the Kentucky courts have stated that, under the alter ego theory, where there is such a unity of ownership that the corporate separateness has ceased and treatment as separate entities would sanction fraud and promote injustice, the corporate entity should be disregarded. *White v. Winchester Land Development Corp.*, 584 S.W.2d 56 (Ky.App. 1979). The following factors must be considered in determining whether disregard of the corporate entity would be appropriate: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment or overpayment of dividends; (4) siphoning of funds by majority shareholders; and (5) guarantee of corporate liabilities by major shareholders. *Id.* at 62.

The record in this case discloses that D & D was incorporated in Kentucky in 1966 (Affidavit of Thomas E. Daugherty, No. 15, [hereinafter TED Aff.]). One thousand shares of stock were issued and subscribed, Thomas Daugherty owning 500 shares and Gene Daugherty owning 500 shares. (*Id.*). In 1971 D & D redeemed the stock of Gene Daugherty, making Thomas Daugherty the sole shareholder. The bylaws required three directors and officers. D & D operated in compliance with the bylaws until 1973 when only two officers and directors were elected (TED. Aff. at 2). Thomas Daugherty served as a director and president, and Lee Ann Philips served as a director and secretary-treasurer and was also an officer-administrative employee. (*Id.*). Until 1981 the corporation held annual meetings of the shareholders and board of directors and occasionally held special meetings. Minutes of these meetings were recorded. The corporate charter was revoked in 1982. (TED Aff.). Prior to revocation of the charter, the corporation conducted a coal mining business and had an office in Oneida, Tennessee, which it shared with another corporation. (Deposition of Thomas E. Daugherty at 7, [hereinafter TED Depo.]). The corporation employed a secretary, a foreman, defendant Daugherty and occasionally his son. (*Id.* at 6–9). The bylaws

---

**1.** D & D was incorporated in Kentucky. Affidavit of Thomas E. Daugherty, No. 15, at 2.

authorized the president to supervise and control the affairs of the corporation. (By-laws of D & D, Art. IV, § 4). As president, Thomas Daugherty made day to day management decisions. (TED. Depo. at 9). He received no money from the corporation other than a salary. (*Id.* at 12). No dividend was paid. (*Id.*). He borrowed money to loan to the corporation when the corporation could not otherwise obtain a loan. (*Id.* at 13–14). The corporation executed promissory notes for the loans. (*Id.*). All property owned by the corporation, except perhaps a corporate automobile, was used only for corporate business. (*Id.* at 15–18). The corporate bank account was not used for personal funds. (*Id.* at 18).

 Based on the foregoing description of the corporate activity, the Court must determine, in accordance with the factors previously set forth, whether D & D was the alter ego of Thomas Daugherty. First, there is no proof of undercapitalization. Second, corporate formalities were generally observed. Failure to elect the required number of directors is a *de minimus* deviation from the corporate formalities. Under Kentucky law, the bylaws may be amended by the board of directors. Ky. Rev.Stat. 271A.135 (1981). If failure to amend the bylaws to conform with the conduct of business was a violation of the statute, a penalty is prescribed. Ky.Rev. Stat. § 271A.640(2) (1981). However, the general rule is that the bylaws may be waived. *See* 18 Am.Jur.2d, *Corporations* § 173 (1965). Third, no dividends were paid. Fourth, no funds were siphoned or commingled. Fifth, Thomas Daugherty borrowed money to loan to the corporation when the corporation could not otherwise obtain funds. Weighing these factors, the Court finds insufficient grounds to disregard the corporate entity. D & D was a close corporation and of necessity the control of the corporation was primarily vested

in Thomas Daugherty. However, corporate formalities were observed, and the corporation was operated as a separate and distinct entity. The record discloses no fraud. Thus, defendant Thomas Daugherty may not be held liable for the corporate debt.

 The final issue for determination is whether defendant Ronald Daugherty is liable for the corporate debt of DBC, a Tennessee corporation. The Tennessee courts clearly have adopted the "instrumentality rule" to pierce the corporate veil where a subsidiary company is a mere instrumentality for the parent company. Under the instrumentality rule the corporate veil will be pierced where there is: (1) parental domination of the finances, policy, and business practice; (2) use of the domination to commit fraud or other wrong; and (3) proximate cause connecting the wrong with injury to the plaintiff. *Continental Bankers Life Ins. Co. v. Bank of Alamo,* 578 S.W.2d 625 (Tenn.1979). However, the rule with regard to piercing the corporate veil in the case of a sole shareholder and a corporation is less clear. In *Oak Ridge Auto Repair Service v. City Finance Co.,* 57 Tenn.App. 707, 425 S.W.2d 620 (1967), *perm. to app. den.* Aug. 7, 1967, the Court held that the sole shareholder was liable for the corporate debt where the "meager record" indicated that the corporation was at most a mere instrumentality of the shareholder. The opinion fails to discuss, however, what factors caused the corporation to be a mere instrumentality of the shareholder. In another case with rather unusual circumstances[2] the Court held that the corporate entity would be disregarded to render justice. *Fidelity Trust Co. v. Service Laundry Co.,* 160 Tenn. (7 Smith) 57, 22 S.W.2d 6 (1929). It further has been held that where the sole shareholder, officer and director had not treated the corporate assets as his own

---

**2.** In *Fidelity Trust Co. v. Service Laundry Co.,* 160 Tenn. (7 Smith) 57, 22 S.W.2d 6 (1929), the testatrix directed the executor to cancel the indebtedness of her nephews but if one nephew was indebted and the other was not, the executor was to pay the nonindebted nephew a sum

equal to the debt. The court held that a note of a private business corporation owned by the nephew payable to the testatrix was a debt of the nephew because cancellation of the debt would inure to his benefit.

and no fraud had been committed, the corporate veil could not be pierced. *Kopper Glo Fuel, Inc. v. Island Lake Coal Co.,* 436 F.Supp. 91 (E.D.Tenn.1977). The Court believes that all the surrounding circumstances must be considered in determining whether the corporation was a mere instrumentality of the shareholder. Factors to be considered are: (1) inadequate capitalization; (2) fraud; (3) commingling of funds; and (4) failure to follow corporate formalities.

The record discloses that DBC was incorporated in Tennessee in 1973. (Affidavit of Richard Daugherty, No. 14, [hereinafter RD Aff.], at 2). One thousand shares of stock were issued and subscribed, Richard Daugherty owning 500 shares and Troy Daugherty owning 500 shares. (*Id.*). In 1976 Richard Daugherty bought Troy Daugherty's stock and became the sole shareholder. (*Id.*). The bylaws provided for three officers (with one person allowed to serve simultaneously in two offices, with the exception of president) and not less than two directors. (By-laws of DBC, Art. III, § 1; Art. IV, § 1). The bylaws were observed until 1976, when Ronald Daugherty was elected sole director and president/secretary. (Defendant Ronald L. Daugherty's Answers to Plaintiff's First Set of Interrogatories, [hereinafter RD Interrogs.], at 5). Through 1980 the corporation held annual and special meetings of the directors and shareholders and the minutes of these meetings were recorded. The charter was revoked in 1983. (RD Aff. at 3). Before the charter was revoked the corporation operated from an office in Oneida, Tennessee. (Deposition of Ronald Dougherty, [hereinafter RD Depo.], at 8). DBC employed a secretary, a foreman, and Ronald Daugherty. (*Id.* at 9–11). Ronald Daugherty managed the day to day operation of the business with help from his foreman. (*Id.* at 9–11). Ronald Daugherty received as compensation only a salary.

(*Id.*). Ronald Daugherty never received any loans from or made loans to the corporation. (*Id.* at 12). No corporate property, except for a corporation vehicle, was used for personal business (*Id.* at 12–13). The corporate bank accounts were never used for personal funds or to pay personal obligations. (*Id.* at 14). In 1979 a transfer of corporate indebtedness was made to Rondale, Inc., a business in which Ronald Daugherty owned a 25% interest. (*Id.* at 14–17).

Considering the circumstances as a whole, the Court cannot find that DBC was a mere instrumentality of Ronald Daugherty. Because DBC was a close corporation, out of necessity Ronald Daugherty made the controlling corporate decisions. However, under the bylaws, as president, he was authorized to supervise the affairs of the company. (By-laws, Art. IV, § 3). Plaintiff says that because Ronald Daugherty conducted the business of DBC in violation of the bylaws requiring at least two directors and three officers, the actions of Ronald Daugherty were without authority and subject him to liability for the corporate debt under Tennessee Code Annotated § 48-1-405 (1984). This Court has held that section 48-1-405 is inapplicable where the corporation has been duly incorporated and is in legal existence. *United States v. Phillips,* Civ. No. 3-84-157, unpublished slip op. (E.D.Tenn. Aug. 28, 1984). The corporate action taken without the requisite number of officers and directors may have been *ultra vires;* but under the Tennessee Code such action is not invalid and such lack of capacity may be asserted only by certain parties in specific situations. *See* Tenn.Code Ann. § 48-1-405 (1984). Further, where all the shares are owned by one shareholder, the corporation is required to have only one director.[3] Tenn.Code Ann. § 48-1-802(a)(1) (1984). To the extent that the bylaws provide for more than one director and officer, the bylaws may be

---

3. Apparently even though the corporation has only one shareholder and one director, it is required to have a president and a secretary, not the same person. Tenn.Code Ann. § 48-1-811 (1984). Thus, the action of a corporation not in compliance with the statute may be *ultra vires.* Again, as stated in the text, such action though *ultra vires* is not invalid and may not be asserted by plaintiff herein. *See* Tenn.Code Ann. § 48-1-405 (1984).

waived. *See* 18 Am.Jur.2d, *Corporations,* § 173 (1965). The record discloses that DBC was operated as a separate and distinct entity. There is no proof of commingling of funds or fraud or other improper purpose. The corporate formalities observed. The mere fact that Ronald Daugherty was the sole shareholder, director and officer is insufficient grounds to disregard the corporate entity. *Kopper Glo Fuel, Inc. v. Island Lake Coal Co.,* 436 F.Supp. 91 (E.D.Tenn.1977).

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.

Order Accordingly.