**WILTON CORPORATION,**
**Plaintiff–Appellant,**

v.

**ASHLAND CASTINGS CORPORATION; Ashland Capital Corporation; Chimera Corporation, Defendants,**

Keith A. Brown, Defendant–Appellee.

No. 98–6189.

United States Court of Appeals, Sixth Circuit.

Argued: July 20, 1999.

Decided and Filed: Aug. 18, 1999.

William G. Colvin (argued and briefed), Schumaker & Thompson, Chattanooga, Tennessee, for Plaintiff–Appellant.

Michael C. Cohan (argued and briefed), Cavitch, Familo, Durkin & Frutkin, Cleveland, Ohio, for Defendant–Appellee.

Donald J. Ray, Ray & Van Cleave, Tullahoma, Tennessee, for Defendants.

Before: WELLFORD, SILER, and GILMAN, Circuit Judges.

WELLFORD, J., delivered the opinion of the court, in which SILER, J., joined. GILMAN, J. (p. 678), delivered a separate concurring opinion.

## OPINION

WELLFORD, Circuit Judge.

Plaintiff Wilton Corporation ("Wilton") appeals from the district court's grant of summary judgment in favor of defendant Keith A. Brown. Wilton argues that the district court erred in finding that there was insufficient evidence to create a genuine issue of material fact. Brown countered by filing a motion for damages and costs to be paid by Wilton, arguing that Wilton's appeal was frivolous. For the reasons set forth below, we **AFFIRM** the district court and **GRANT** Brown's motion for sanctions against Wilton for filing a frivolous appeal, and **REMAND** to the district court for a hearing to determine the proper damages and costs to be awarded Brown.

## I.

Wilton, a Colorado corporation with its principal place of business in Illinois, has a manufacturing facility located in Winchester, Tennessee. Wilton required certain metal castings to be supplied for use as product components. Ashland Castings ("Ashland")[1], an Ohio corporation with its principal place of business in Ohio, produced the castings used in production by Wilton under a contract. Ashland was owned by defendant, Keith A. Brown, its sole shareholder, president and chairman of the board. Brown provided his own capital for Ashland stock, and he loaned the company substantial amounts of his own money, in addition to arranging for outside financing for the company. Brown, however, was not involved in the day-to-day operations of the company, which suffered losses on a consistent basis. In sum, Brown covered all of Ashland's losses by contributing capital or making loans. He drew no salary and received no distributions or dividends from Ashland.

In April of 1994, Ashland contracted to supply Wilton with castings for wheel hubs on a one year fixed price basis. The contract was negotiated by Charles Harwell, general manager of Ashland, and Jim Wiseman, the purchasing manager at Wilton. Brown was not involved in the negotiation of the contract. At the time of the contract, Wilton dealt with Ashland as a corporate entity. Wilton did not call upon Brown to guarantee Ashland's performance.

In June of 1994, there was a serious fire at Ashland's facility, which caused significant expense and disrupted production. For pressing financial reasons, Ashland decided to increase its prices to its customers, including Wilton. Wilton objected, arguing that Ashland was bound by the price in the 1994 contract. When the situation was brought to Brown's attention, he declined to intervene. Due to a lack of other suppliers, Wilton continued to purchase castings from Ashland for a time at the higher price under protest.

In December of 1995, Wilton sued Ashland for damages, alleging breach of contract among other things. Thereafter, Wilton amended its complaint to add Ashland Capital, Chimera Corp., and Brown personally. The claims against Chimera and Brown requested that Ashland's corporate veil be pierced, and that the court impose Ashland's liabilities on both Chimera, a separate corporation, and Brown. Chimera and Brown moved for summary judgment. The district court granted Chimera and Brown's motions for summary judgment, which were not made final pursuant to Fed.R.Civ.P. 54(b). In July of 1998, however, the parties entered into a consent judgment, making Ashland solely liable for breach of contract and awarding Wilton damages of $155,395.51. The con-

---

1. In 1995, the assets of Ashland Capital Corp. were purchased by DF Acquisition Corp., which then changed its name to Ashland Castings Corp. Though the district court refers to Ashland Capital Corporation as "Old Ashland" and to Ashland Castings Corp. as "New Ashland," we are dealing only with "Old Ashland" in this appeal. Therefore, the "Old" and "New" distinctions are unnecessary.

sent judgment also disposed of all the remaining claims in the action.

Wilton filed this appeal, challenging the order wherein the district court found that Ashland's corporate veil could not be pierced to impose the corporation's liability on Brown personally. The appeal asserts that personal liability should be imposed. Brown has filed a motion seeking damages and costs based on what he asserts is a frivolous appeal. Wilton has filed no response, but argued in oral argument that Brown's motion should be denied.

## II.

We review the district court's grant of summary judgment *de novo*, using the same standards applied by the district court. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *J.C. Wyckoff & Associates, Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1483 (6th Cir.1991). Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56. We determine whether sufficient evidence has been presented to create an issue of fact, not to weigh the evidence or make credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether Ashland's corporate veil should be pierced to make Brown responsible for the liabilities of Ashland, the district court applied the substantive law of Ohio.[2] In accordance with Ohio law, the district court applied the three-prong test articulated in *Belvedere*

*Condominium Unit Owners' Assoc. v. R.E. Roark Companies, Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), to decide whether to pierce Ashland's corporate veil. According to *Belvedere*, the corporate form may be disregarded only when:

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own;

(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and

(3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere*, 617 N.E.2d at 1086. In the instant case, the district court held that Wilton failed to establish the second prong of the *Belvedere* test. The court reasoned that, assuming that Ashland had breached its contract with Wilton, "breach of contract standing alone is insufficient to constitute fraud and to justify the extraordinary remedy of piercing the corporate veil." The court noted that not uncommonly, corporations breach contracts as a result of business pressures and practices. Piercing the corporate veil, however, was designed to reach the pockets of those who intentionally abuse the corporate form, in such instances as when corporate funds are used for personal purposes of the owner, or where the creditor does not realize that a corporation is involved rather than the individual owner-operator, or there is a sham corporation. Under the circumstances of this case, the district court reasoned that Brown's conduct "simply does not rise to this level of fraud," and there

---

**2.** The district court applied the law of Ohio because (1) the parties agreed that Ohio law governs the issue, and (2) there is no conflict between the competing doctrines in the laws of Tennessee and Ohio. We need not inquire into choice-of-law issues; the parties did not dispute that Ohio law applied. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 n. 4 (2d Cir.1998) (noting that there is no need to undertake a choice-of-law inquiry where

parties agree on applicable substantive law); *American Fuel Corp. v. Utah Energy Development Co.*, 122 F.3d 130, 134 (2d Cir.1997) (same). It appears that the choice-of-law rule in Tennessee would also dictate that we apply the substantive law of Ohio because it is the state of Ashland's incorporation. *See United States v. Daugherty*, 599 F.Supp. 671, 673 (E.D.Tenn.1984).

was no proof of fraud and manipulation of the corporation on the part of Brown.

■ Wilton argues that the district court erred in finding that the evidence was insufficient to allow a jury to consider the question. Basically, Wilton claims that Ashland had no mind, will, or existence separate from that of Brown because Brown was the sole funding source of Ashland, and because of Brown's decision not to interfere in the decision to breach the supply contract with Wilton by raising the price. The decision to breach the contract, Wilton argues, had the effect of minimizing Brown's further risk of loss of investment to the detriment of Wilton. Wilton argues generally that the deposition testimony and documents create a genuine issue of material fact as to whether Brown should be answerable for damages caused by Ashland.

Brown argues that Wilton has not put forth even a scintilla of evidence to suggest that Ashland did not have a valid existence separate from Brown himself. Brown first points out that limited liability is a fundamental principle of corporate law, and that the rule applies even where there is only one shareholder. *See, e.g., First Nat'l Bank of Chicago v. F.C. Trebein Co.*, 59 Ohio St. 316, 52 N.E. 834 (1898); *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 602 N.E.2d 685 (1991); *see also* OHIO CONST., ART. XIII, § 3 ("[B]ut in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."). He also points out that Wilton has the burden to show that each of the three *Belvedere* prongs are met in this case. *See University Circle Research Center Corp. v. Galbreath Co.*, 106 Ohio App.3d 835, 667 N.E.2d 445, 448 (1995). Brown argues that, under Wilton's strained analysis, ANY corporation with one shareholder that breaches a contract might satisfy the *Belvedere* test, and that the *Belvedere* factors are not satisfied under any reasonable version of the facts submitted by Wilton. Although Brown admittedly exercised a high degree of control over the business of the corporation, he relies on the statement in *Belvedere* that "mere control over a corporation is not in itself a sufficient basis for shareholder liability." *Belvedere*, 617 N.E.2d at 1086.

■ The district court found, in granting Brown summary judgment, that there is simply no evidence that Brown's actions caused Ashland to commit fraud or to misrepresent the relationship between Ashland and Brown. We agree that a simple breach of contract cannot suffice as the type of "illegal" or fraudulent act intended by the court in *Belvedere* under the plain circumstances here. A party who suffers a loss from a *corporation's* breach ordinarily has recourse against the corporation and its assets or guarantors, if any. Brown did not exercise his ownership or control to defraud or to deceive Wilton. The district court committed no error in granting Brown judgment.

*Belvedere* puts in plain and simple terms the rule we apply in this case:

> A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation. *See* Presser, *Piercing The Corporate Veil* (1991) 1–4. An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for *criminal* or *fraudulent* purposes.

*Belvedere*, 617 N.E.2d at 1085 (emphasis added); *see also University Circle Research Center*, 667 N.E.2d at 449; *Bucyrus–Erie v. General Prod. Corp.*, 643 F.2d 413, 418 (6th Cir.1981). Wilton failed to show any criminal, fraudulent, or deceptive action on Brown's part or that he induced the contract; misrepresented his relationship to and with Ashland; or abused the corporate form. Thus, his argument that the corporate veil of Ashland should have been pierced is without merit.

### III.

#### A.

We now consider Brown's motion for sanctions. Brown moved for damages and

costs as sanctions against Wilton in February of 1999, under Fed. R.App. P. 38, which is as follows:

**Frivolous Appeals—Damages and Costs**

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

There has been no formal, separate response by Wilton, or its counsel, to this motion.

We first note that Wilton has produced no evidence that Ashland was a sham corporation or that Brown exercised complete dominion and control over it. Brown filed an affidavit in early 1997, in which he stated under oath that he "was not involved in establishing the prices for Wilton" and that it was Chuck Harwell who negotiated the contract with Wilton. In their depositions, neither Harwell, who acknowledged being the person responsible for dealing with Wilton, nor Wilton's president, Charles Vogl, had any information that Brown himself negotiated the original price or amended and increased prices for Ashland. Furthermore, Wilton made no allegation that Brown drew money out of Ashland in the form of salary, dividends, or other distributions to offset his very large losses; that Ashland's corporate formalities were suspect; that Ashland relied upon Brown in any way when Wilton made its deal with Harwell; that Ashland did not consistently and continually lose money after 1993; or that Ashland was not a corporation in good standing. Moreover, Wilton has produced no evidence that Brown made any representations or inducements to obtain or keep Wilton's business.

The district court found that Wilton's claims in response to Brown's motion for summary judgment were narrowed considerably: "that Brown caused [Old] Ashland to breach its contract with Wilton and that this action constitutes fraud or an illegal act" under *Belvedere* rationale.[3] The district court concluded, and we believe properly under the evidence:

Nothing in the record indicates that Brown fraudulently induced [Old] Ashland to make this decision. Faced with the knowledge that Brown would not be providing further capital to the corporation and with continuing losses, [Old] Ashland decided to increase its prices and to breach its contract with Wilton. This decision does not constitute fraud and does not justify imposing personal liability on Brown.

Piercing the corporate veil is an equitable remedy designed to avoid the injustice which results from abuse of the corporate form.... [Old] Ashland's breach of contract with Wilton, whether motivated by Brown's refusal to provide continuing capital to the company or his desire to minimize liability as a guarantor, simply does not rise to this level....

Earlier, the district court concluded that "Wilton has presented no evidence that Brown acted with malice, in his self-interest, or contrary to the perceived best interests of [Old] Ashland. Brown, as sole shareholder, merely decided to stop personally funding [Old] Ashland's continuing losses." There was simply no "tortious interference," "fraud," or illegality involved in this conduct.

■ Contrary to Wilton's argument made to the district court and to this court on appeal, Ashland, as a corporation in good standing and substantially capitalized, was a separate business entity. Ashland's liabilities were not those of Brown, its principal investor and officer, unless by reason of fraudulent, illegal or unjust acts. No such acts were demonstrated by Wilton

---

**3.** Wilton puts it in its brief (p. 5) "that Brown used his power as sole shareholder, as president, as a director and chairman of the board, and as its primary, if not only source of funding, to cause Ashland to breach its contract with Wilton."

to have been undertaken by Brown in connection with Ashland's business decision unilaterally to raise prices to Wilton and other customers. No material issue of fact was raised by Wilton in response to Brown's motion for summary judgment. Wilton's reliance on *Belvedere* is of no help, nor do the Ohio cases cited thereafter provide any legal basis for Wilton's appeal under the circumstances of this case. Furthermore, Wilton is simply incorrect in asserting that the question of whether the corporate veil should be pierced cannot be disposed of at the summary judgment stage. *See, e.g., Koch v. Lind*, 121 Ohio App.3d 43, 698 N.E.2d 1035 (1997).

### B.

We have related factual details of the controversy in order to reflect our view that the district court acted entirely properly in granting Brown summary judgment under the facts and the applicable law. We are now called upon to decide whether this appeal by Wilton is "frivolous" under App. R. Civ. P. 38. Pursuant to that rule, Brown has filed a motion for damages and costs and Wilton has had full opportunity to respond.

■ BLACK'S LAW DICTIONARY (6th ed.) defines "frivolous appeal" as:

> One in which no justiciable question has been presented and appeal is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed. *Brooks v. General Motors Assembly Division*, Mo.App., 527 S.W.2d 50, 53.[4]

We believe that generally this may be an appropriate standard, but we look to the law of this circuit in dealing with this question. In *Martin v. Commissioner of Internal Revenue*, 756 F.2d 38, 41 (6th Cir.1985), we held that such sanctions may be imposed in a case involving a tax protestor where the issues were "already

clearly resolved." We have stated in several other cases that Rule 38 sanctions may be imposed when prosecuted with an appearance or motivation of "delay," "harassment," or "other improper purposes." *Dallo v. INS*, 765 F.2d 581, 589 (6th Cir.1985); *see also NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.1987); *NLRB v. Akron Paint & Varnish Co.*, 985 F.2d 852, 855 (6th Cir.1992); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir.1997).

Some cases have added the qualification that the appeal be "obviously without merit" for Rule 38 sanctions to be applied. *See Dallo, supra; Cincinnati Bronze, supra; Akron Paint & Varnish, supra.* Our most recent case on this subject has described the Rule 38 sanctions requirement to be: "Sanctions are appropriate where 'the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.' " *Allinder v. Inter–City Products Corp. (USA)*, 152 F.3d 544, 552 (6th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1115, 143 L.Ed.2d 110 (1999) (quoting *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983)).

A majority of other circuits have not required "bad faith" or "intentional misconduct" as a basis of Rule 38 sanctions. *See Nagle v. Alspach*, 8 F.3d 141, 145 (3d Cir.1993) ("[The Rule 38] inquiry is an objective one, focusing on the merits of the appeal regardless of good or bad faith.") (internal quotation marks and citation omitted); *In re Drexel Burnham Lambert Group, Inc.*, 995 F.2d 1138, 1147 (2d Cir. 1993) (holding that standard for imposition of "frivolous appeal" penalty is whether appeal is found to be groundless, without foundation, and without merit, even though appellant did not bring it in bad faith); *In re Perry*, 918 F.2d 931, 934 (Fed.Cir.1990) (holding that bad faith was not require-

---

4. WEBSTER'S THIRD INTERNATIONAL DICTIONARY, in defining "frivolous," uses such terms as "of little weight or impor-  tance," "not serious," and "clearly insufficient."

ment for imposition of sanctions for frivolous appeal and that standard under rule governing sanctions for frivolous appeal is objective one and has nothing to do with mental state of person sanctioned); *Asbury v. Brougham*, 866 F.2d 1276, 1283 (10th Cir.1989) (holding that subjective bad faith is not a prerequisite to an award of damages and double costs; appeal lacking foundation is sufficient); *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir.1988) (holding that finding that appeal was brought in bad faith was not required to impose sanction upon appellate counsel for filing frivolous appeal); *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1207 (7th Cir.1987) (per Posner, J.) ("[W]e emphasize that we are not accusing Hill's counsel of morally blameworthy conduct. We find merely that he made (we assume in perfect good faith) objectively groundless legal arguments for which a monetary sanction is proper...."); *Reliance Ins. Co. v. Sweeney Corp., Maryland*, 792 F.2d 1137, 1139 (D.C.Cir.1986) (same); *Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1985) (same); *but cf. Hirschfeld v. Spanakos*, 104 F.3d 16, 20 (2d Cir.1997) (holding that standard for sanctioning party for bringing appeal or motion is whether sanctioned party acted in bad faith, vexatiously, wantonly, etc.); *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1134 (9th Cir.1995) (same); *Ross v. City of Waukegan*, 5 F.3d 1084, 1090 (7th Cir. 1993) (holding that imposition of sanctions for frivolous appeal requires some evidence of bad faith).

We believe that this circuit, on the whole, does not require that an applicant such as Brown must demonstrate bad faith or intentional misconduct on the part of Wilton in order to prevail on its motion, but the issue is not free of doubt. *Boggild v. Kenner Products, Division of CPG Products Corp.*, 853 F.2d 465 (6th Cir. 1988), is one case in our circuit that has used the term "bad faith," but we indicated there that bad faith or misconduct may be found "ordinarily" where the issues "are so insubstantial or unsupported as to sug-

gest" bad faith. *Id.* at 470. Indeed, in *Boggild*, we held that "other such improper purposes" in pursuing the appeal could also justify an award of sanctions. *Id.* ("Ordinarily, sanctions are awarded under Rule 38 only where there is some evidence of intentional misconduct, such as pursuit of an appeal in bad faith for purposes of harassment, delay or other such improper purposes."). In any event, *Boggild* is the only recent published case in our circuit to even use the term "bad faith"at all as part of the standard. We rely on the line of cases beginning with *Cincinnati Bronze*, 829 F.2d at 591, and ending with *Barney*, 110 F.3d at 1212 (6th Cir.1997), and *Allinder*, 152 F.3d at 552, in concluding that a finding of bad faith is not required before sanctions under Rule 38 may be imposed by this court.

Thus, though we find this appeal to have been filed without delay or bad faith, we do find it to be wholly without merit. We conclude that this appeal involved an issue already "clearly resolved," that it was "insubstantial," and the plaintiff's arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact.

In conclusion, we merely note that whether or not to impose sanctions in an appeal of this sort presents the court with a difficult choice. We do not wish to chill any appeal, especially in the criminal context, which involves serious, controversial, doubtful, or even novel questions. Where a client reasonably relies on the advice of counsel, it may be that a sanction for a frivolous appeal is properly imposed on the attorney if the appeal is without merit or substance. In any event, we are confident that such sanctions will rarely be imposed.

We conclude, in sum, that defendant has made out a case for the imposition of sanctions. "In order to protect this court's ability to serve litigants with meritorious cases and in order to make lawyers give thoughtful consideration to whether there are grounds for an appeal before filing an

appeal," we adopt the reasoning of Chief Judge Posner in imposing sanctions in this case. *Hill*, 814 F.2d at 1207. Thus, we **AFFIRM** the district court in all respects, we **GRANT** the defendant's motion for sanctions under Rule 38, and we **RE-MAND** to the district court for a hearing to determine the proper damages and costs to be awarded Brown for Wilton's filing and pursuing a frivolous appeal.

██ We **REMAND** to the district court because a hearing on damages and costs is indicated. The district judge, acting as a special master, is in the best position to have such a hearing and assess these items fairly and efficiently.

GILMAN, Circuit Judge, concurring.

I fully concur in Judge Wellford's analysis of both the merits of this case and the issue of sanctions. My disagreement is with the decision to remand the case to the district court for it to determine the proper amount of the sanctions.

There are two reasons to believe that a determination of the appropriate sanctions is an appellate question. First, Rule 38 of the Federal Rules of Appellate Procedure states that "If a court of appeals determines that an appeal is frivolous, it may ... award just damages and ... costs ..." (emphasis added). FED. R.APP. P. 38. The plain language of the rule does not appear to contemplate a remand. Second, in nine of the ten appellate cases cited in the majority's opinion in which sanctions were awarded, those sanctions were awarded at the appellate level. *See Dallo v. INS*, 765 F.2d 581, 589 (6th Cir.1985); *NLRB v. Akron Paint & Varnish Co.*, 985 F.2d 852, 855 (6th Cir.1992); *Nagle v. Alspach*, 8 F.3d 141, 145 (3d Cir.1993); *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir.1988); *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1203 (7th Cir.1987); *Reliance Ins. Co. v. Sweeney Corp., Marlyand*, 792 F.2d 1137, 1139 (D.C.Cir.1986); *Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir.1985); *Hirschfeld v. Spanakos*, 104 F.3d 16, 20 (2d Cir.1997).

Determining the award of sanctions at the appellate level strikes me as more efficient from the viewpoint of both the parties and the court system. The district court does not possess any more information than do we about the costs that Brown incurred in this appeal. Furthermore, with the district court's crowded docket and the possibility of still another appeal, it may well take months to dispose of what we could handle in a matter of weeks.

I also question the need for oral argument in a matter such as this, the absence of which would allow us to give as much consideration to this collateral issue as would the district court. In addition, our decision would almost certainly be final. I would therefore be inclined to follow Judge Posner's approach in *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1203 (7th Cir.1987), in which the appellee was given 15 days to submit proper documentation to the clerk of the court, and the appellant was given an opportunity to respond.