**HIGHLAND MINING COMPANY,**
Plaintiff–Appellant,

v.

**UNITED MINE WORKERS OF AMER-ICA, DISTRICT 12;** United Mine Workers of America, Local Union 1793, Defendants–Appellees.

No. 03–5019.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

William I. Althen, Rafael E. Morell, Ogletree, Deakins, Nash, Smoak & Stewart, Washington, DC, M. Kirby Gordon, II, Gordon & Gordon, PSC, Owensboro, KY, for Plaintiff–Appellant.

Patrick J. O'Hara, Cavanagh & O'Hara, Springfield, IL, for Defendants–Appellees.

Before: SUHRHEINRICH and GIBBONS, Circuit Judges, and LAWSON, District Judge.*

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

LAWSON, District Judge.

Highland Mining Company filed a lawsuit in the district court to set aside a labor arbitrator's award that ordered Highland to pay certain overtime wages to one of the defendant Union's members. The district court rejected Highland's argument that the award imposed obligations on the employer that were not expressly allowed by the applicable collective bargaining agreement (CBA). We conclude that the arbitrator acted within his authority when he construed the ambiguous terms of the CBA and ordered payment of the overtime wages. We therefore affirm the judgment of the district court.

## I.

The dispute in this case arises from the grievance of union member David Gatten, who contended that Highland failed to pay overtime wages for 1.5 hours of his workweek of April 23, 2001 in violation of the CBA. The CBA in this case consisted of a Memorandum of Understanding (MOU) between Highland and the International Union, United Mine Workers of America (UMW), which adopted, as modified by the MOU, the National Bituminous Coal Wage Agreement of 1998. The grievance was prosecuted on behalf of Gatten by UMW Local 1793.

The dispute centered on the interpretation of Section 8(E) of the MOU, which defined the circumstances in which Highland was obliged to pay overtime wages at the rate of one-and-one-half of the normal contract wage. That section reads:

(1) Overtime at time and one half rate will be paid only for time worked over 40 hours in the workweek, and there will be no pyramiding of overtime.

(2) Paid time off for Holidays, Bereavement, Jury Duty, Military Duty, Personal or Sick Leave, Vacation (of any type), or any other paid time off (or pay in lieu of time off), shall not be compensated on the basis of any regularly scheduled overtime or other overtime.

(3) Paid time off for Jury Duty, Military Duty, Bereavement Days, Floating Vacation Days, Personal or Sick Leave Days and Regular Vacation shall be counted in calculating toward the accrual of 40 hours in the work week in which they occur, for purposes of determining entitlement to time and one-half pay for time worked over 40 hours in the work week. Hours for holidays will be counted in accordance with Section 9.F below, and hours for Union business will be counted in accordance with paragraph 4 below.

(4) Authorized time off for Union business will be counted toward the accrual of 40 hours in the work week in which such time off occurs, for purposes of determining entitlement to time and one half pay for time worked over forty hours in the work week, except that leaves of absence of Article XVII of the NBCWA will not be so counted.

J.A. at 18–19.

According to arbitrator Michael E. Zobrak, the language of Section 8(E) represented a compromise of a dispute between Highland and the UMW over the manner of calculating overtime. He explained that prior to the current MOU, employees were paid overtime rates calculated on a daily basis when the employee's work hours exceeded eight in a single day. Highland apparently insisted that overtime should be paid on a weekly basis only after an employee exceeded forty hours worked. The resulting compromise called for overtime only after an employee worked more than forty hours in a workweek or more than ten hours in a single day for "inside employees," that is, those who worked underground. The language quoted above

was intended to memorialize that compromise.

Gatten was scheduled to work an eight-hour shift for each weekday during the week of April 23, 2001. He worked 33.5 hours over four consecutive days, Monday through Thursday, and was paid at the normal rate ("straight time") for those hours. On Friday, the fifth day of his workweek, he scheduled a vacation day. He was paid for eight hours at the straight time rate for that day. Thus, Gatten received 41.5 hours of straight time pay for the week. Gatten believed he was entitled to overtime pay rather than straight time pay for the 1.5 hours in excess of the forty-hour workweek. Highland disagreed, reasoning that in order for an employee to receive payment at the overtime rate, the employee must actually perform work after accruing forty hours in a single week.

Gatten's grievance was submitted to arbitration in accordance with the CBA. Arbitrator Zobrak conducted a hearing on November 2, 2001 in Henderson, Kentucky and rendered his decision in writing on January 2, 2002 in favor of the employee. He observed that Highland's interpretation of Section 8(E), which essentially called for no overtime payment for vacation hours under any circumstances, "invalidates the provision of section (e) [sic] which allows for the counting of leave hours toward the accrual of forty (40) hours in the workweek for the purposes of determining entitlement to time and one-half pay for hours worked beyond forty (40) hours in the work week." J.A. at 36. He found that there was no provision in the MOU that limited the days on which leave could be taken for the purpose of accruing time toward the forty-hour benchmark, and Highland's construction of the MOU in that fashion "negat[ed] the worth of the hours actually worked." *Ibid.* The arbitrator sustained the grievance because he determined that Gatten's hours credited for work during the week of April 23, 2001 exceeded forty.

Highland filed suit in the United States District Court for the Western District of Kentucky seeking an order vacating the arbitral award. The parties filed cross motions for summary judgment. The district court applied a "highly deferential" standard of review and held that the arbitrator's conclusions were "rationally supported by the language of the MOU." J.A. at 42. The court denied Highland's motion for summary judgment and granted the Union's motion, which sought a dismissal of the complaint and confirmation of the arbitral award. This appeal followed.

## II.

The questions presented to the district court concerned matters of contract interpretation and the authority of labor arbitrators, and therefore they were purely legal in nature. Summary judgment was the appropriate procedural device for resolution of these issues since by its very nature a summary judgment does not involve the determination of disputed questions of fact but is confined to legal questions. Fed.R.Civ.P. 56(c) (summary judgment may be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the district court's legal conclusions *de novo. Lautermilch v. Findlay City Sch.,* 314 F.3d 271, 274 (6th Cir.2003); *Int'l Union, UAW v. Dana Corp.,* 278 F.3d 548, 554 (6th Cir.2002).

■ However, as the district court observed, review of an arbitrator's award is governed by "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer–Stevens Co. v. United Steelworkers of Am.,* 913 F.2d

1166, 1169 (6th Cir.1990). *See also Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7,* 114 F.3d 596, 599 (6th Cir.1997) ("The Supreme Court has made clear ... that courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed."). "The Supreme Court has tightly circumscribed the authority of federal courts to overturn arbitration awards, and has consistently held that they may not do so as long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice." *Eisenmann Corp. v. Sheet Metal Workers Int'l Assoc. Local No. 24, AFL–CIO,* 323 F.3d 375, 380 (6th Cir.2003) (internal quotations omitted) (quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Ibid.* (quoting *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001)).

This court lists four instances in which an arbitral award fails to draw its essence from a labor agreement, and it will vacate an award when "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Dana Corp.,* 278 F.3d at 554 (quoting *MidMichigan Reg'l Med. Ctr.– Clare v. Prof'l Employees Div. of Local 79,* 183 F.3d 497, 502 (6th Cir.1999)).

Highland believes that the award in this case conflicts with Section 8(E)(2) of the MOU, which states that paid vacation time shall not be compensated at overtime rates. It insists that the decision of the arbitrator and the district court to place the primary focus on the provisions of Section 8(E)(3) was too narrow. Rather, Highland contends that allowing an end-of-week vacation day to put a worker into overtime territory imposes a new requirement on Highland to pay vacation days at overtime rates. Highland reasons that because of the conflict and the additional requirement, the award rationally cannot be derived from the MOU, and therefore the award fails to draw its essence from the agreement.

As the district court correctly observed, there is an ambiguity created by the potentially conflicting provisions of Sections 8(E)(2) and (3). Highland reconciles the potential conflict by stating that Section 8(E)(2) deals with the payment of wages, whereas Section 8(E)(3) deals only with the accrual of hours. The arbitrator did not accept that interpretation because he found that it failed to give full meaning to Section 8(E)(3). He could not accept an interpretation of the MOU that made payment of overtime wages depend on when during a workweek an employee chose to schedule a vacation day if that paid time off taken together with other time actually worked put the worker over the forty-hour threshold. Instead, he ordered payment of overtime wages for all hours during the week that exceeded forty, calculating the total time in accordance with Section 8(E)(3).

When an arbitrator is called in to resolve a dispute, "he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility

in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The entire premise of Highland's argument is that worker Gatten claimed, and the arbitrator ordered, overtime for the vacation hours taken on Friday, April 27, 2001. However, the arbitrator chose to view the accumulation of work hours in one-week blocks instead of confining his consideration to time worked day by day. Indeed, that is precisely what the parties chose to do in their agreement when, in Section 8(E)(1), they recited that entitlement to overtime would be determined on the basis of "time worked over 40 hours *in the workweek.*" J.A. at 18 (emphasis added). When viewed from that perspective, one cannot say that Highland was asked to pay the overtime rate for vacation time on Friday rather than for time worked during one of the other days of the week.

There is no dispute that a worker could count vacation time toward his forty-hour total for determining his right to overtime wages. There likewise is no limitation in the MOU on the days of the week to which accrued vacation time may apply under Section 8(E)(3). It is true that Highland could not be ordered to pay overtime rates for paid time off, but when viewing the period in one-week blocks, Highland in reality was paying time-and-one-half for 1.5 hours Gatten actually worked on a day other than Friday because the weekly hours exceeded forty, counting the vacation time toward the forty hours as the MOU requires.

The court cannot say that the arbitrator's decision to view the workweek as a whole rather than parse it out day by day is an unreasonable interpretation of the MOU. But even if we had some doubt in

that regard, it would not justify vacating the award. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers,* 484 U.S. at 37–38. Here, Highland was not ordered to pay overtime rates for paid time off. The arbitrator reconciled the language of Sections 8(E)(2) and (3) in a way that was rational, and his award did not impose additional requirements on Highland or conflict with the MOU. The award was based on the language of the MOU, not on untethered considerations of fairness and equity. We cannot say, therefore, that the arbitral award did not draw its essence from the parties agreement.

### III.

■ The Union has also filed a separate motion for attorney fees on the ground that Highland's appeal is frivolous. Federal Rule of Appellate Procedure 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." An appeal is frivolous when it is easily recognizable as lacking all merit and there is little prospect that it can succeed. *See Wilton Corp. v. Ashland Castings Corp.,* 188 F.3d 670, 677 (6th Cir.1999).

The fact that the dispute in this case involves a mere 1.5 hours in overtime pay has not been ignored by this court. However, Highland contends that the decision concerning the arbitral award will be precedent-setting in other disputes under the MOU and the operation of the Highland Mine. Moreover, the court finds that the two subsections of the MOU discussed

above were in potential conflict, and the problem of reconciling them presented a genuine controversy. Even with the strict standard of review, Highland's arguments were not so foreign or strained that they presented no possible basis upon which this court might alter the district court's judgment.

Because Highland's appeal is not frivolous, the Union's motion for costs and attorney fees under Federal Rule of Appellate Procedure 38 will be denied.

### IV.

The district court properly concluded that the arbitrator acted within his authority and that the award derived its essence from the collective bargaining agreement. The considerable deference to labor arbitration awards, as noted above, does not permit this court to upset the arbitration award in this case. Accordingly, the judgment of the district court is **AFFIRMED**. The appellee's motion for costs and attorney fees is **DENIED**.

GIBBONS, Circuit Judge, dissenting.

Because I believe the arbitrator's decision conflicts with the express terms of the MOU, I respectfully dissent. Even though, as the majority correctly noted, we here employ an extremely narrow standard of review, we retain the authority to overturn the arbitrator's decision when it conflicts with the express terms of the arbitration agreement. *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers of Am., Local 135,* 793 F.2d 759, 766 (6th Cir.1986).

Section 8(E)(1) of the MOU plainly states that "[o]vertime at time and one half rate will be paid only for time *worked* over 40 hours in the workweek." (emphasis added). Here, Gatten worked 33.5 hours from Monday through Thursday. Then he took Friday off, adding eight hours of paid time off to his weekly total. Gatten did not perform any work at all after accruing forty hours. Thus, he is not due overtime pay under the plain language of § 8(E)(1).

In addition, § 8(E)(2) specifically states that paid time off shall not be compensated as overtime. This blanket provision covers all possible types of paid time off and bluntly states that Highland is not required to pay overtime wages for such time. Section 8(E)(3) is entirely consistent with these two subsections. It requires only that paid time off be counted toward the accrual of forty hours in the workweek. It does not require that paid time off be compensated as overtime. It is true, as the majority points out, that the point during the week at which an employee takes leave may affect whether he receives overtime pay. This result, while perhaps odd, is entirely consistent with the express, unambiguous overtime provisions of the MOU. For these reasons, I would reverse the district court's decision.