**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0690n.06**
**Filed: August 10, 2005**

**Case No. 04-3750**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **LEE W. YEAGER; PAUL T. SCHULER,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE NORTHERN** |
| **GENERAL MOTORS CORPORATION,** | ) | **DISTRICT OF OHIO** |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |
|                 | ) | |
| | ) | |
| | ) | |

**BEFORE: GUY, BATCHELDER, and GIBSON\*, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiffs-Appellants Lee Yeager and Paul

Schuler appeal the district court's order granting summary judgment in favor of Defendant-Appellee

General Motors Corp. ("GM") in this Title VII race discrimination case. Because Yeager and

Schuler lack standing to bring this claim, we will AFFIRM the judgment of the district court. For

the reasons that follow, we will GRANT GM's motion for costs and attorneys fees as to Yeager and

DENY it as to Schuler.

**I.**

Yeager and Schuler are non-seniority (i.e., they are not employed by GM) white males who

applied for positions as apprentices at GM's Lordstown Fabrication Plant ("the Fab Plant") in June

---

\*The Honorable John R. Gibson, Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting
by designation.

of 2002. Prior to filling positions in its apprentice training program at the Fab Plant, GM advertised the openings and solicited applications throughout the community. Interested persons were required to come to the plant and fill out a Request for Apprentice Information ("RFI"). GM then randomly drew 100 RFIs and extended the lucky applicants an offer to take the written apprentice exam. Candidates not selected through the random draw were not given further consideration. Because, historically, mostly white males had applied for and were placed in apprentice positions with GM, the Fab Plant undertook a "targeted" recruiting process in 2002, whereby 118 minority and female applicants who appeared to possess the necessary skills also were extended the opportunity to sit for the apprentice exam, but without going through the random draw process.

All 218 selected applicants were then permitted to take the identical written apprentice exam, which included mathematics and reading comprehension. Those candidates whose scores were average or above average (without regard to race or sex) were invited to proceed to the interview stage of the process while those whose scores were below average were removed from consideration. Neither Yeager nor Schuler proceeded to the interview phase: Yeager because his RFI was not selected in the random draw, and Schuler, because, although his RFI was randomly selected, his score on the apprentice exam was below average.

GM's collective bargaining agreement with the United Auto Workers labor union requires that for every two seniority applicants offered apprenticeships, only one non-seniority applicant may be offered an apprenticeship. Pursuant to the terms of that agreement, GM keeps separate lists for seniority applicants and non-seniority applicants. The Fab Plant hired only 10 apprentices in 2002, and each of them had seniority status. Since June of 2002—when Yeager and Schuler applied for apprenticeship positions—the Fab Plant has hired no non-seniority apprentice applicants.

2

In January of 2004, Yeager and Schuler filed suit in federal district court alleging that GM denied them entrance into the apprenticeship program because of their race in violation of Title VII, 42 U.S.C. § 2000e-2. For Yeager, this is the third in a series of virtually identical federal lawsuits challenging the hiring practices of GM's apprenticeship program. *See Yeager v. GM Corp.*, 26 F.3d 389 (6th Cir. 2001) ("*Yeager I*"); *Yeager v. GM Corp.*, 67 Fed.Appx. 335 (6th Cir. 2003) ("*Yeager II*"). According to GM, this is Schuler's second such suit. The district court granted summary judgment in favor of GM on the ground that Yeager and Schuler lacked standing to bring a Title VII suit. Yeager and Schuler's timely appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). A motion for summary judgment should be granted only if the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court must take the nonmoving party's well-pleaded allegations as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977).

The doctrine of standing is an integral component of the case and controversy requirement of Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing, therefore, is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to invoke federal jurisdiction, the party bringing suit bears the burden of establishing an "injury-in-fact." *Lujan*, 504 U.S. at 561. As we stated in *Yeager I*, "[t]he relevant question for the purpose of assessing standing is whether Yeager would have been hired as an

3

apprentice if he had been randomly selected." 265 F.3d at 397; *see also Brunet v. City of Columbus*, 1 F.3d 390, 397 (6th Cir. 1993 ) ("in the context of affirmative action programs, the challenger need only show that, but for the program, he would have been considered for the job to satisfy standing requirements").[1] As the district court correctly held, both Yeager and Schuler have failed to make this showing.

In 2002, GM hired only 10 apprentices to work at the Fab Plant. Each of these apprentices had seniority status. Since June of 2002, GM has not hired a single non-seniority apprentice applicant to work at the Fab Plant. Neither Schuler nor Yeager had seniority status at the Fab Plant. Neither of them, therefore, can demonstrate that, but for the recruiting program, he would have been considered for an apprenticeship position. Schuler, who took the written exam, did not score well enough on it to merit any further consideration. He complains that GM required white male candidates to take a more difficult written test than that taken by women and minorities. We find nothing in the record to call into question the district court's finding that the written examinations taken by all 218 candidates were identical, but even if there were any such evidence, Schuler ultimately was not eligible to be hired as an apprentice because he had no seniority status. Yeager also complains that the test administered to white males was more difficult than that administered to women and minorities, but, of course, Yeager did not take the test. And even if he had, he, like

---

[1] Yeager and Schuler argue that our inquiry on the question of standing is controlled by a statement in a footnote in *Regents of the Univ. of Calif. v. Bakke*, which said "even if Bakke had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing." 438 U.S. 265, 281 n.14 (1978). But that footnote goes on to say that "[t]he constitutional element of standing is plaintiff's demonstration of any injury to himself that is likely to be redressed by favorable decision of his claim. The trial court found such an injury, apart from failure to be admitted, in the University's decision not to permit Bakke to compete for all 100 places in the class, simply because of his race." *Id.* (internal citations omitted). Ultimately, Yeager and Schuler could not compete for the apprenticeship positions, not because of their race, but because they were non-seniority applicants, a factor having nothing to do with their race.

4

Schuler, was ineligible to be hired because there were no apprenticeship positions available for non-seniority applicants.

Finally, as we understand their complaint, Yeager and Schuler contend that the GM applicant lists continue in existence, although they may be augmented by new rounds of testing. GM's permitting certain female and minority applicants to take the exam without having to go through the random draw, the plaintiffs argue, decreases their own opportunities either to be selected to take the test or to score well enough on the test to proceed further in the process. This, in turn, they argue, constitutes an injury because in the future, GM may have openings for non-seniority apprentice candidates. This claim of injury is neither "actual" nor "imminent." *See Lujan*, 504 U.S. at 560.

Neither Schuler nor Yeager has standing to bring a Title VII case against GM. Accordingly, we **AFFIRM** the district court's order granting summary judgment in favor of GM.

### III.

GM has filed a motion asking us to award damages and double costs pursuant to FED. R. APP. P. 38, which provides "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." We have held that "an appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit." *Allinder v. Inter-City Prods. Corp.*, 152 F.3d 544, 552 (6th Cir. 1998) (quotation omitted). An appellee does not have to demonstrate that the appellant or his attorneys acted in "bad faith" to succeed on a motion for sanctions. *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999) (imposing sanctions because the issue on appeal had been "clearly resolved" and the appellant's arguments "essentially had no reasonable expectation of altering the district court's judgment based on law or

5

fact"). We may sanction an attorney "who knows or reasonably should know that a claim pursued is frivolous," *Tareco Properties, Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003) (quotation omitted), and we have imposed sanctions jointly and severally on a client and his attorney when the attorney should have been aware of the frivolous nature of his client's claim given that the exact issue raised on appeal was rejected by this court in a previous case. *See Raft v. Commissioner of Internal Revenue*, No. 03-3566, 2005 WL 1385951 at *4 (6th Cir. June 1, 2005) (unpublished).

In *Yeager I*, Yeager, represented by the same counsel who represents him here, argued that he had standing to sue GM for employment discrimination when his name was not selected in the random drawing. We held that Yeager lacked standing because he would not have been hired as an apprentice even if he had been randomly selected. *Yeager I*, 265 F.3d at 397. When Yeager challenged GM's hiring process again in *Yeager II*, we dismissed his claim for want of standing and noted "[t]he instant case . . . presents the same claim at issue in *Yeager I*, despite plaintiffs' attempts to rearticulate the claim in a different form." 67 Fed. Appx. at 338. As in *Yeager I*, we stated that Yeager lacked standing because he could not prove that he would have been selected as an apprentice "but for" GM's affirmative action measures. *Id*. Relying on the same recycled arguments that we have twice rejected, Yeager once again challenges GM's apprentice-hiring program. In case after case, including the cases involving Plaintiff Yeager, we have made it clear that a Title VII plaintiff challenging an affirmative action program must prove that but for the program, he would have been considered for the job. In light of that ample precedent, and in light of the undisputed fact that GM has not hired a non-seniority applicant to work as an apprentice at the Fab Plant since June of 2002, this appeal is patently frivolous. We therefore hold that costs and attorneys fees not to exceed $5,000 are to be imposed against Lee Yeager and his attorney, Michael

D. Rossi, jointly and severally. We decline to impose costs and fees against Paul Schuler, because the record before us is insufficient to demonstrate that Schuler's conduct in pursuing this appeal is similarly egregious. An itemized and verified bill for the costs and attorneys fees may be filed with the Clerk of this Court, with proof of service, within fourteen (14) days after entry of this order.